136 So.2d 153 (1961)
Alton D. SAWYER, Plaintiff and Appellant,
v.
CENTRAL LOUISIANA ELECTRIC COMPANY, Inc., Defendant and Appellee.
No. 418.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1961.
Rehearing Denied January 15, 1962.
Certiorari Denied February 26, 1962.
*154 Jacque B. Pucheu, Eunice, for plaintiffappellant.
Landry, Watkins, Cousin & Bonin, By: Jack J. Cousin, New Iberia, for defendantappellee.
Before FRUGE, SAVOY and CULPEPPER, Judges.
CULPEPPER, Judge.
This is a tort action for damages suffered by plaintiff as a result of defendant's discontinuance of electrical services to plaintiff's home, while plaintiff was away on vacation. Plaintiff is a resident of Eunice, Louisiana, and the defendant is a private utility company supplying electricity and water to those residing in said town. From an adverse judgment in the lower court, plaintiff has taken this appeal.
The plaintiff and his wife departed from Eunice, Louisiana, on September 16, 1960, for a vacation in California. Upon their return to their home on September 26, 1960, they discovered that during their absence their electric service had been cut off, causing considerable spoilage of food in an ice box and deep freeze, as well as other other damages to the floor of plaintiff's home due to the ice box flooding. Plaintiff immediately called the defendant company to inquire as to why his service had been disconnected. The defendant informed Mr. Sawyer that he had been mailed a disconnect notice, and that upon his failure to pay the utility bill within five days thereafter, his electricity and water had been cut off.
Defendant's position is that under Article 6, Section 4 of the Constitution of the State of Louisiana, the Louisiana Public Service Commission has the authority and power to regulate and control all gas, electric light, heat and power waterworks and other public utilities in the State of Louisiana and that pursuant to this authority, the Public Service Commission issued a general order dated September 10, 1957, in which the following rules were issued:
"IT IS ACCORDINGLY ORDERED, that no utility company shall discontinue its service to any customer or *155 subscriber for nonpayment of bills without first having served upon such customer or subscriber direct and specific notice of its intention to discontinue such service five days in advance of the actual discontinuance of service. Such notice shall not be general in character, but shall specifically advise the individual customer concerned that service will be discontinued five days thereafter unless his bill is paid. The contents of such notice shall be limited to the purpose above described and shall not include any other matter. And it is further,
"ORDERED, that five full days shall be allowed after service of such notice before the customer's service is actually discontinued."
It was stipulated that plaintiff's bill for August, 1960, was in the sum of $49.37 and that it was not paid within the fifteen days discount period from the date of mailing said statement. The evidence shows that said bill was mailed on or about August 17, 1960, and that it became delinquent on September 9, 1960, and actually was not paid until September 26, 1960, which was after the electric service had been disconnected on September 20, 1960.
The sole issues presented for our consideration are whether or not a disconnect notice was actually mailed to the plaintiff and, if so, whether or not the sending of this notice, by ordinary mail, satisfies the requirements of the Public Service Commission's order.
Plaintiff's first contention is that defendant discontinued his electric service without giving the required five days' notice thereof by mail or otherwise. On this factual issue plaintiff testified that prior to his leaving Eunice he had received no disconnect notice nor did he find one when he returned. A neighbor of the plaintiff, who picked up their mail while they were absent, stated that she had not seen any disconnect notice.
Mrs. Sawyer, plaintiff's wife, admitted that prior to their departure for California she had received the August bill from the defendant, and had written a check for the amount of the bill, less the discount. She failed to mail the check within the discount period so she tore it up and wrote another check for the full amount of the bill. She stated that due to "company for three days right before we left" she didn't mail this second check until she had reached California. However, the check, which was mailed by airmail from California on September 22, was incorrectly addressed and was not received by the defendant company until September 26 after the Sawyers had returned to Eunice. The check which was mailed from California was addressed to "Central Louisiana Electric Company, City".
Mrs. Sawyer denied receiving a disconnect notice immediately before, during, or after their trip to California, but she admitted having previously received such a notice, knew what it was, and stated "it would scare me."
In support of its contention that the five day notice was mailed to plaintiff, the defendant introduced the testimony of its employee, Mrs. Joycie A. Reed, who testified that it was her duty to make out disconnect notices to be mailed to all customers who were delinquent in paying their bills. Mrs. Reed, in performing this duty, makes out a list of all customers who are delinquent, and when it becomes necessary to send these customers disconnect notices, she places the symbol "F" deside their name. This procedure was followed in the instant case as there was introduced in evidence the list made out by Mrs. Reed which shows this symbol, written by Mrs. Reed, beside plaintiff's name. This list, as well as the testimony of Mrs. Reed, shows that the disconnect notice was mailed from Eunice on September 14, 1960. The actual cut-off occurred on September 20, 1960, which was more than five days after said mailing date.
The evidence shows that Mrs. Reed makes out the disconnect notices, addresses them, places them in an envelope, seals and stamps them. The actual mailing is done by Mr. *156 John Tate, another employee of the utility company. Mrs. Reed, in her testimony, was quite positive that this procedure had been followed in the plaintiff's case, and her list of delinquent customers strongly indicates that it had. Also corroborative of her testimony is another list she wrote indicating that on the day the service was disconnected, she telephoned plaintiff's home several times, but no one answered.
Mr. John Tate testified that on the day the notices were sent, he collected them from Mrs. Reed and took them to the post office for mailing. Mr. Tate stated that as there was a large amount of mail sent out each day from his office, he could not be positive that this particular notice was mailed. However, he stated that he knew of no reason why it would not have been mailed and there is nothing in the record to indicate otherwise.
Applicable here is the well established general rule of evidence that a presumption of due receipt of a communication through the mails arises upon proof that it was properly addressed, stamped and mailed. See Hortman-Salmen Co. v. Continental Casualty Co., 170 La. 879, 129 So. 515; 20 Am.Jur. 196 Sec. 196. Mrs. Reed testified her records, made in her own hand, showed the notice was properly addressed, stamped and mailed from Eunice on September 20, 1960. Therefore, a presumption of fact arises that it was duly received by plaintiff. This is a rebuttable presumption, but the only rebuttal evidence is the denial by plaintiff and his wife, and the neighbor, that they received the notice. This was clearly an issue involving credibility of witnesses. The trial judge obviously did not find the presumption of receipt of the notice rebutted. We can not say he was manifestly erroneous.
The next argument by plaintiff is that the Public Service Commission order requires personal service of a disconnect notice. We do not agree that it was the intent of this order that the disconnect notice be served, but rather that ordinary mailing of such notice is sufficient.
Defendant introduced in evidence, over plaintiff's objection, a letter received by defendant from Mr. S. I. Nichols, the Director of the Utilities Division of the Louisiana Public Service Commission. This letter states:
"This has reference to your letter of October 11 pertaining to this Commission's intent of that portion of our General Order issued September 10, 1957, pertaining to discontinuance of service.
"I have again discussed this matter with Mr. Coleman and he and the Utilities Division agree that the intent of the Commission in issuing this order was that a written notice by ordinary mail is sufficient to comply with the provisions of the order provided the notice allows at least five days before the discontinuance of service."
Plaintiff objected to the above letter being offered on the grounds that an interpretation of an administrative order is not admissible. We do not think this objection has merit. An administrative body can interpret its own rules and such interpretation becomes a part of the rule. See 42 Am.Jur. 392, Verbo, Public Administrative Law, Sec. 77.
The Public Service Commission order in this regard requires that prior to the discontinuance of a utility company's service to its customers for nonpayment of bills, the customer must be served with a direct and specific notice of the company's intention at least five days in advance of the actual discontinuance. There is no dispute that the language and form of the discontinuance notice used in this case was legal and sufficiently adequate to inform its customers of its intention.
Having determined that the notice in question was mailed and that mailing this notice by ordinary mail complied with the *157 Commission's order, we cannot find that the defendant was guilty of any actionable fault.
For the reasons assigned, the judgment appealed from is affirmed. All costs of this appeal are assessed against the plaintiff.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.