179 So.2d 537 (1965)
Joseph MOFFETT, Plaintiff and Appellant,
v.
CALCASIEU PARISH SCHOOL BOARD, Defendant and Appellee.
No. 1502.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1965.
Rehearing Denied November 17, 1965.
*538 Russell T. Tritico, Lake Charles, for plaintiff-appellant.
Henry L. Yelverton, Lake Charles, for defendant-appellee.
Before FRUGE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
Under the provisions of LSA-R.S. 17:443, commonly called the "Teachers' Tenure Act", plaintiff petitioned the court for review of the action of the Calcasieu Parish School Board removing him from his teaching position. The trial judge affirmed the action of the School Board. Plaintiff appealed.
The general facts are that plaintiff, Joseph Moffett, was a band director and music teacher at Washington High School in Calcasieu Parish for approximately 8 years. He held a Teacher's Certificate and was a permanent teacher, within the meaning of the Teachers' Tenure Act, LSA-R.S. 17:443.
On November 15, 1963, the school principal, Mrs. Jessie Clifton, was inspecting a storage room at the school and discovered that only 11 of the 50 band uniforms were present. She sent for Moffett and questioned him about the missing uniforms. He answered that since the school had no money to pay for cleaning, he had let the students take the uniforms home to clean them. A rather heated argument ensued, in which Mrs. Clifton says she reprimanded Moffett for violating her previous instructions not to allow the students to take home *539 the uniforms, which belonged to the school. Mrs. Clifton then turned to leave with the remark, "I do not appreciate the way things are being done." Moffett then said, "I don't appreciate it either and you can kiss my ass."
Moffett says the vulgar words were not spoken until Mrs. Clifton had left the scene and that he spoke only to himself in a low voice. The board contends the vulgar words were spoken directly to Mrs. Clifton in a loud voice and were heard not only by her, but by the school janitress in the storeroom and by teachers and students in adjoining classrooms.
Following a complaint by Mrs. Clifton to Mr. H. A. Norton, superintendent of Calcasieu Parish Schools, Moffett was charged with willful neglect of duty and incompetence, the charges being restricted to the above described incident. A hearing was held and Moffett was dismissed from the board's employment.
Plaintiff's brief filed in this court alleges four specifications of error. The first three concern the district judge's refusal to allow plaintiff to introduce testimony as to what transpired after the board completed its formal hearing and went into "Executive Session" to deliberate. The fourth is that the trial judge erred in his factual conclusions.
We will first discuss the three specifications of error concerning the board's "Executive Session". Plaintiff contends the lower court erred: (1) in refusing to allow plaintiff to introduce testimony to show that additional evidence was illegally presented to the board during the "Executive Session", as to which evidence there was no specification in the charges and as to which plaintiff had no opportunity to defend himself; (2) in refusing to allow interrogatories to be propounded to members of the School Board to show the "unfair manner" of the deliberations; and (3) in refusing to allow in the trial de novo a full review of the "illegal deliberations".
These first three assigned errors address themselves to the scope of judicial review. Generally, the scope of judicial review of administrative agencies, although varying with the statutes involved, is limited to a determination of whether the action of the agency was: (1) in accordance with the authority and formalities of the statute; (2) supported by substantial evidence; and (3) arbitrary or an abuse of discretion. State ex rel. McAvoy v. Louisiana State Board of Medical Examiners, 238 La. 502, 115 So.2d 833; State ex rel. Williams v. Avoyelles Parish School Board, 147 So.2d 729 (La.App. 3rd Cir. 1962); 73 C.J.S. Verbo Public Administrative Bodies and Procedure §§ 202-210, p. 548 et seq. Except for these purposes, the court will not review the wisdom, reasoning or judgment of administrative agencies, for to do so would substitute the discretion of the court for that of the agency.
In State ex rel. Rathe v. Jefferson Parish School Board, 206 La. 317, 19 So.2d 153 (1944), a leading case on judicial review under the Teachers' Tenure Act, our Supreme Court quoted with approval the following statement of law by the trial judge:
"`There is nothing more firmly established in law than the principle that, within the limits of their authority, the power and discretion of legally created governing boards is supreme. Their wisdom or good judgment cannot be questioned by the courts. Members of these boards are appointed or elected because of their peculiar fitness for the post. Judges are elected because of their legal knowledge and ability. They are not experienced in the business affairs of Parishes and municipalities, * * * or the conduct of a public school system. A presumption of legality and regularity attaches to the action of all government boards. It is only when it is clearly shown that the action of such a board is beyond its authority or is arbitrary, unreasonable, or fraudulent that a court is justified in interfering.'"
*540 With these principles of law in mind, let us examine the facts of the present case to determine whether what happened during the "Executive Session" is within the scope of judicial review. Plaintiff's first specification of error is that the trial judge refused to allow him to show that additional testimony was presented to the board during Executive Session. We think it is clear that if additional evidence was in fact presented to the board during the Executive Session, then this constituted a violation of LSA-R.S. 17:443. Moffett was entitled to notice of the specific charges against him, a hearing of all the evidence and an opportunity to rebut such evidence. Hence, the trial court should have allowed plaintiff to inquire whether "additional evidence" was presented to the board during the Executive Session.
The testimony which plaintiff sought to introduce, to show that additional evidence was presented to the board during Executive Session, consisted of interrogatories and answers thereto by Supt. Norton and the school board. Although the trial judge refused to allow the introduction of these documents, it permitted the offering into the record thereof for purposes of consideration by the appellate court, under the provisions of LSA-C.C.P. Art. 1636. We have carefully studied these interrogatories, and the answers by the school board and Supt. Norton. There are only three things indicated which might possibly be considered as additional evidence.
First, was a statement by board member, James R. Davis, that Moffett had previously been employed at the Mossville School; but nothing was added to this remark which would influence the board in its decision.
Second, was a comment by Supt. Norton that Moffett had previously given him a statement admitting the vulgar remark to Mrs. Clifton, and had actually apologized to her; hence that Moffett's denial at the hearing was untrue. This statement by Mr. Norton was not prejudicial error because other evidence already introduced during the hearing before the board showed clearly that Moffett's testimony was false. This evidence showed that Mrs. Clifton and several others heard Moffett utter the vulgar remark in a loud voice directly to Mrs. Clifton. Hence, Norton's statement in Executive Session that Moffett had not told the truth was nothing more than a conclusion which the board was fully justified in reaching under the evidence already introduced at the hearing.
The third thing contained in the answers to interrogatories, which plaintiff contends was additional evidence, is a comment by Dr. Morris that he had received a complaint from a merchant that Moffett owed a bill. There was no elaboration of this comment and we fail to see how it alone was sufficiently prejudicial to upset the board's ruling.
Furthermore, the school board's answers to the interrogatories state that no additional evidence, other than that mentioned above which might possibly be construed as such, was presented to the board during Executive Session; and that this did not influence the board in its decision, which was based solely on the evidence presented during the open hearing.
It is therefore our conclusion that even if the trial judge had permitted plaintiff to introduce in evidence the interrogatories and answers, for the purpose of showing that additional evidence was presented to the board during Executive Session, the result of this judicial review would not be changed.
Plaintiff also contends that the trial judge should have allowed the introduction of the interrogatories propounded to members of the school board for the purpose of showing the "unfair manner" of the deliberations during Executive Session; and that a full review of everything which transpired during the Executive Session. *541 should have been allowed for the purpose of showing the "illegal deliberations". A reading of these interrogatories shows they ask the school board members such questions as: (1) Did you make any statements (during Executive Session) which were favorable or unfavorable to Moffett? (2) How many "straw" votes were taken? (3) Did you make your feelings as to Moffett's guilt or innocence known to the board? (4) Did anyone suggest that Moffett should not return to Washington High School because of friction with Mrs. Clifton?
Under the law, as stated above, these last mentioned interrogatories and any answers given thereto would clearly be outside the scope of judicial review. They would not show a departure from the formalities of the statute; or that the board exceeded its authority; or acted in an arbitrary or fraudulent manner. They would only question the opinions given by the members during Executive Session and the wisdom, reasoning, policy and discretion of the board members. Such matters cannot be questioned by the court.
The final specification of error is that the trial court erred in its factual conclusions. The review by the trial court was conducted as a trial de novo, in which the court considered both the transcript of the hearing before the school board and other evidence introduced by plaintiff and defendant to prove or disprove the charges made. The trial judge found the following facts, as stated in his written opinion:
"First. The objectionable remark was made by the plaintiff, Joseph Moffett, Jr., at the Washington High School on or about the date in question.
"Second. This remark was directed to the principal, Mrs. Jessie Clifton, and it was not a remark that was made under Moffett's breath, or to the wall, or to anyone else.
"Third. The remark was made at or near the door of the bookroom as Mrs. Clifton and Mr. Moffett proceeded out of the door to go to their respective offices or rooms.
"Fourth. The objectionable remark was made in a loud and angry manner, at least of such volume that it could be overheard by persons in the vicinity, that is, in the hall and in the adjoining classrooms.
"Fifth. The remark was actually overheard by at least one teacher, and by several of the students in that teacher's classroom, that is, Mr. Spikes', and also by the janitress who was at or near the door to the bookroom at the time."
"Sixth. There was some provocation or reason for Mr. Moffett to be upset, but in the opinion of the Court, this would not justify his having made the remark to the principal at the time and place in question."
We see no need to review the evidence. It overwhelmingly supports the findings of fact by the trial judge.
Plaintiff's final argument is that this one indiscretion did not amount to willful neglect of duty or incompetency sufficient to justify his dismissal under the provisions of LSA-R.S. 17:443. We have already found that the action of the school board was taken in accordance with the authority and formalities of the statute, and that there was ample substantial evidence to support the factual findings as to the occurrence of the incident. Plaintiff makes no contention of fraud. The issue is whether the board acted arbitrarily or abused its discretion in concluding that these actions by Moffett constituted willful neglect of duty justifying dismissal.
The charges filed against Moffett, preliminary to the school board hearing, reveal the reasoning of the school board, and read in pertinent part as follows:
"It is your duty in your position at all times to conduct yourself with dignity *542 in the presence or near school children. The use of the above language under these circumstances represents a total breakdown of dignity and therefore substantiates the charge of wilful neglect of duty.
"Furthermore, competence in your profession requires proper recognition of and respect to your superiors, and a selfdiscipline that will be exemplary to the school children over whom you have authority. The disrespect you showed the principal of the school by your use of such abusive language, as well as your lack of discipline in managing your own conduct, indicates your incompetence for the job to which you are assigned."
It was the board's judgment that such vulgarity and flagrant disrespect, if left unpunished, would cause a serious breakdown in the disciplinary control of the principal over the teachers and of the principal and teachers over the children. Clearly, the board gave good reasons for its decision and did not act in an arbitrary manner.
The trial judge also has eloquently stated reasons justifying the board's decision:
"The Court is also of the opinion that the maintenance of discipline is an absolute essential in the orderly administration of any school. With the many students we have in our public schools, who must remain quiet and orderly during the process of their teaching, it is necessary that they be taught discipline. And, of course, in order for them to learn and appreciate such, the teachers must themselves be examples of discipline and at least display respect for the principal. This is true, regardless of what personal feelings or animosity a teacher might have for the principal.
* * * * * *
"Thus, it is clear to the Court that a teacher is duty-bound to obey the orders of, and to display respect for, the principal at all times. And, certainly, the failure to do so by making the remark that was made by the plaintiff in this instance constitutes a wilful neglect of duty."
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.