341 So.2d 73 (1976)
Nelse B. ALLEN, Plaintiff-Appellant,
v.
LaSALLE PARISH SCHOOL BOARD et al., Defendants-Appellees.
No. 5702.
Court of Appeal of Louisiana, Third Circuit.
December 21, 1976.
Rehearing Denied January 26, 1977.
Writ Refused March 25, 1977.
George M. Strickler, Jr., New Orleans, Kidd & Katz by Paul Henry Kidd, Monroe, Smith, Taliaferro, Seibert & Boothe by Leo Boothe, Jonesville, for plaintiff-appellant.
Long & Peters by Jimmie C. Peters, Jena, for defendants-appellees.
Before CULPEPPER, WATSON and GUIDRY, JJ.
GUIDRY, Judge.
Plaintiff, Nelse Allen filed this suit against the LaSalle Parish School Board, hereinafter referred to as the "Board", for judicial review of his discharge from employment as a school bus operator. Dr. Harold G. Denning, Superintendent of Schools, is also made a defendant. Defendant, "Board", dismissed plaintiff pursuant *74 to authority granted it under the school bus operators' tenure law, LSA-R.S. 17:493. The trial court upheld the action of the "Board" and affirmed plaintiff's dismissal. Plaintiff appeals.[1]
A review of the record in this matter discloses that plaintiff, a school bus driver for the "Board" for 27 years, was on April 29, 1975 involved in an altercation with two students, Johnny and Tommy Wilkinson. Johnny Wilkinson was 12 years old at the time of the incident and a student at Jena Junior High School; his brother Tommy was 15 years of age and a student at Jena High School. The altercation occurred on plaintiff's bus.
A day or so prior to the incident in question plaintiff had noticed spit on the back seats of his bus where young Johnny Wilkinson and a friend had been sitting. On the morning of April 29, 1975, suspecting that young Johnny Wilkinson and his friend were responsible for such misconduct, plaintiff directed them to sit on the front seat of the bus. The boys complied with the directive.
That afternoon plaintiff proceeded to Jena Junior High School to pick up his 7th and 8th grade students. Jena Junior High School was the first stop on his afternoon route. Plaintiff's route next required him to proceed to Jena High School and then on to the Goodpine Middle School.
Johnny Wilkinson boarded the bus at the first stop. Plaintiff, at that time, again directed Johnny to sit in the front seat. When Johnny refused plaintiff told him that he should either sit on the front seat or leave the bus and go to the principal's office. Johnny then complied with plaintiff's demand, and was so positioned when plaintiff stopped at the next point, Jena High School. Tommy Wilkinson boarded the bus at this stop.
At the Goodpine Middle School plaintiff stopped his bus in the school parking lot to pick up more children. When Johnny's friend, who has also been previously ordered by plaintiff to sit in the front seat, got on the bus, the two of them decided to move to the rear. Plaintiff then told Johnny to remain where he was, but Johnny moved from the front seat and as he did so plaintiff tried to grab the boy but missed. Plaintiff then started down the aisle to get Johnny. As plaintiff moved toward the rear of the bus, Tommy Wilkinson stood in the aisle in an attempt to prevent plaintiff from reaching his younger brother. There was an exchange of words between Tommy and plaintiff at which time Tommy in a threatening gesture clenched his fist. Plaintiff then slapped Tommy with his open hand. Tommy sat down and plaintiff continued down the aisle. When plaintiff reached the rear of the bus he found that Johnny had crawled beneath one of the rear seats. Before plaintiff could attempt to reach Johnny, Tommy came down the aisle and jumped on plaintiff's back. There was a scuffle and plaintiff again slapped Tommy. *75 At this point Tommy pulled away from plaintiff and ran from the bus. Johnny had, during the altercation between plaintiff and Tommy, made his way to the front of the bus. Plaintiff, standing in the rear of the bus, approached Johnny. Johnny cursed plaintiff. Plaintiff then struck the 12 year old in the face with his open hand. Johnny left the bus. Plaintiff then proceeded on to complete his route.
The jurisprudence of our state is abundantly clear that where an administrative agency or hearing body is the trier of fact the courts will not review the evidence before such body except for the following limited purposes: (1) to determine if the hearing was conducted in accordance with the authority and formalities of the statute; (2) to determine whether or not the fact findings of the body were supported by substantial evidence; and, (3) whether or not the hearing body's conclusions from these factual findings were arbitrary or constituted an abuse of the hearing body's discretion. Stewart v. East Baton Rouge Parish School Board, 251 So.2d 487 (La.App.1st Cir. 1971); Moffett v. Calcasieu Parish School Board, 179 So.2d 537 (La.App.3rd Cir. 1965); Barber v. Lake Charles Pipe and Supply Company, 148 So.2d 326 (La.App.3rd Cir. 1962).
We consider the record before us in light of this well established rule.
Under the provisions of the school bus operators' tenure law, a school board, complying with the requirements therein, has the discretionary authority to dismiss a school bus driver for conduct which amounts to incompetency or willful neglect of duty. LSA-R.S. 17:493 provides in pertinent part as follows:
"A permanent school bus operator shall not be removed from his position except upon written and signed charges of willful neglect of duty, or incompetence, or immorality, or drunkenness while on duty, or physical disability to perform his duties, or failure to keep his transfer equipment in a safe, comfortable and practical operating condition, or of being a member of or contributing to any group, organization, movement or corporation that is prohibited by law or injunction from operating in the state of Louisiana, and then only if found guilty after a hearing by the school board of the parish in which the school bus operator is employed. . . All hearings hereunder shall be private or public, at the option of the operator or operators to be affected thereby . . . The operator or operators affected shall have the right to appear in their own behalf and with counsel of their selection, and be heard by the board at the hearing. Nothing herein shall impair the right of the parties to appeal to a court of competent jurisdiction."
It is obvious from the record that the "Board" complied with all of the procedural formalities required by the above quoted statute. Plaintiff, after due notice of the written charges against him, appeared at the hearing on May 22, 1975 with an attorney of his choosing. At this hearing plaintiff was given the opportunity to present witnesses and to cross-examine the "Board's" witnesses. Clearly plaintiff's rights under the statute were protected.
We next determine if the "Board" in discharging plaintiff under the provisions of LSA-R.S. 17:493, for "willful neglect of duty or incompetence . . ." did so upon fact findings supported by substantial evidence and whether its determination to discharge plaintiff was arbitrary or an abuse of discretion.
At the outset we observe that the record reflects no substantial dispute with regard to the facts as briefly hereinabove outlined.
Filed in the proceedings in the instant matter is a publication issued by the Louisiana State Department of Public Education. The publication is entitled "Pupil Transportation, Bulletin No. 1191, 1971". This handbook for Administrators, Teachers, and School Bus operators sets forth established rules and regulations for pupils riding school buses. We note that this bulletin gives no authority to the school bus driver to take disciplinary action against pupils *76 who are in violation of the rules and regulations. Instead, the pamphlet indicates that it is the duty of the bus driver to notify the principal after due warning has been given to the undisciplined pupil. The bulletin also provides that any complaints of drivers, pupils, or parents shall be promptly reported to the principal or superintendent.
Plaintiff contends that he has an obligation to maintain discipline and good order on his bus, and therefore corporal punishment, reasonable in degree, may be administered by him for disciplinary reasons. In support of this contention plaintiff relies on Roy v. Continental Insurance Company, 313 So.2d 349 (La.App.3rd Cir. 1975) writs refused, September 12, 1975. Recognizing that under the holding in the cited case a "teacher" may under certain circumstances have a discretionary right to use corporal punishment, we can find no basis to permit an extension of this ruling to include school bus drivers. A school bus driver is not a "teacher", nor is it his function to be responsible for the progress, training, education or discipline of children. Certainly we recognize that in an emergency situation the school bus driver, as the custodian of transported students, may have the right to take some disciplinary action. However, considering the circumstances in the instant matter we cannot conclude that the "Board" was arbitrary or abused its great discretion in determining that the disciplinary measures taken by plaintiff on the occasion in question were excessive and amounted to willful neglect of duty or incompetence. The evidence indicates that the incident occurred while the bus was parked in a school yard. When the students, Johnny and Tommy Wilkinson, became unruly plaintiff had only to direct them off the bus and/or notify the principal. Although, plaintiff's action in using some force to restrain the older Wilkinson child may have been justified, it is difficult to justify his actions in regard to Johnny. Johnny Wilkinson, who at the time of the incident was only 12 years old, admittedly did nothing more than verbally deride the plaintiff.
The above being considered we are of the opinion that the "Board" and the trial court had substantial evidence upon which to base their conclusions that plaintiff was willfully neglect in his duty or incompetent. We further hold that such conclusion was not arbitrary or an abuse of discretion. Although, under the particular facts of this case we may not have reached the same conclusion as that of the hearing body or trial court, since we do not find the conclusion of the "Board" arbitrary or an abuse of discretion we are not at liberty to substitute our judgment for that of the administrative body.
For the foregoing reasons the judgment appealed from is affirmed. All costs to be borne by the plaintiff-appellant.
AFFIRMED.
NOTES
[1] As will be set forth in the body of this opinion plaintiff's dismissal was as a direct consequence of an altercation he had with two students on April 29, 1975. As a result of this incident the "Board", on May 22, 1975, held a hearing at which time testimony of witnesses was taken; both parties, the "Board" and Nelse Allen, were represented by counsel. Subsequent to this hearing, on June 9, 1975, Nelse Allen filed a petition praying that a temporary restraining order issue enjoining the "Board" from terminating petitioner's employment until the court could hear and determine the merits of petitioner's claim. Petitioner further prayed that the "Board" be preliminarily enjoined from terminating petitioner's employment without just cause. Plaintiff in this petition alleges that the "Board" as a result of the incident on April 29, 1975, and following the hearing on May 22, 1975, gave him an alternative to either retire or accept a mandatory (30) day suspension without pay and be placed on one year supervised probation. On June 23, 1975 the court rendered judgment rejecting plaintiff's demand for a preliminary injunction and dissolved the temporary restraining order that had been previously issued. No appeal was taken from this judgment.

Presumably Nelse Allen rejected the alternatives presented to him by the "Board" for he was discharged on June 23, 1975. On September 15, 1975 Nelse Allen filed this suit in the district court admitting that the "Board" discharged him on June 23, 1975. Plaintiff alleges that the slapping incident of April 29, 1975 did not constitute grounds for dismissal under LSA-R.S. 17:493.