430 So.2d 1114 (1983)
SAVE OUR SELVES, INC., et al.
v.
The LOUISIANA ENVIRONMENTAL CONTROL COMMISSION and the Louisiana Department of Natural Resources.
No. 82-CA-0207.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
Rehearing Denied June 3, 1983.
*1115 Stephen M. Irving, Baton Rouge, for plaintiffs-appellants.
Ian Douglas Lindsey and Seth Thomas Low, Baton Rouge, for Atty. General Office.
Charles S. McCowan, Jr., Baton Rouge, for defendant-appellee Louisiana Environmental Control Com'n.
R. Gordon Kean, Jr., Baton Rouge, for intervenor appellee IT Corp.
Before EDWARDS, PONDER and LEAR, JJ.
*1116 EDWARDS, Judge.
This appeal challenges the issuance of permits by The Louisiana Environmental Control Commission which authorized the IT Corporation to construct and operate a hazardous waste disposal plant.
The IT Corporation ("IT") filed an application with The Louisiana Department of Natural Resources for the necessary permits to construct and operate a hazardous waste disposal facility at a location near Burnside in Ascension Parish. The application was accepted for review and on September 29, 1980, The Louisiana Environmental Control Commission ("Commission") convened an adjudicatory hearing to consider IT's application. Save Our Selves, Inc., a citizens group, and other interested persons and groups (hereinafter referred to collectively as "appellants") were permitted to intervene and participate in the proceedings. On December 16, 1980, after extensive hearings, the Commission voted to issue the requested permits: a hazardous waste disposal permit, a water discharge permit and an air emission permit.
Appellants filed a petition for review of the Commission's decision by the district court, under the provisions of LSA-R.S. 49:964, a portion of the Louisiana Administrative Procedure Act. IT was granted permission to intervene in the proceedings before the district court. The court affirmed the decision of the Commission and appellants have appealed. They urge the following specifications of error:
"1. The Trial Court and the Environmental Control Commission committed an error of law in upholding a permit based upon a permit application which was obviously and unreasonably incomplete.
"2. The Trial Court committed an error of law in upholding and the Environmental Control Commission committed an error in granting the permit when the facility does not meet the requirements of the Hazardous Waste Management Plan.
"3. The Trial Court committed an error of law in upholding an interlocutory decision of the Commission, not allowing cross-examination of an IT expert witness about claimed `trade secrets'."
LSA-R.S. 49:964 gives an aggrieved person the right to judicial review of an agency's final decision or order. The Commission is an "agency" for purposes of the Administrative Procedure Act. LSA-R.S. 49:951(2). Therefore, the scope of review of this matter is governed by LSA-R.S. 49:964 G, which provides as follows:
"The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
"(1) In violation of constitutional or statutory provisions;
"(2) In excess of the statutory authority of the agency;
"(3) Made upon unlawful procedure;
"(4) Affected by other error of law;
"(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
"(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues."
Under the Administrative Procedure Act, a reviewing court is confined to the record established before the agency (unless additional proof is taken in accordance with LSA-R.S. 49:964 F). Buras v. Board of Trustees of Police Pension, 367 So.2d 849 (La.1979). A presumption of validity attaches to administrative enactments and the burden of proving the invalidity thereof is on the opponent. First National Bank of Abbeville v. Sehrt, 246 So.2d 382 (La.App. 1st Cir.), cert. den., 248 So.2d 334, 258 La. 909 (1971). In Allen v. LaSalle Parish Sch. Bd., 341 So.2d 73 (La.App. 3rd Cir.), cert. *1117 den., 343 So.2d 203 (La.1977), the court observed:
"The jurisprudence of our state is abundantly clear that where an administrative agency or hearing body is the trier of fact the courts will not review the evidence before such body except for the following limited purposes: (1) to determine if the hearing was conducted in accordance with the authority and formalities of the statute; (2) to determine whether or not the fact findings of the body were supported by substantial evidence; and, (3) whether or not the hearing body's conclusions from these factual findings were arbitrary or constituted an abuse of the hearing body's discretion. Stewart v. East Baton Rouge Parish School Board, 251 So.2d 487 (La.App. 1st Cir.1971); Moffett v. Calcasieu Parish School Board, 179 So.2d 537 (La.App. 3rd Cir.1965); Barber v. Lake Charles Pipe and Supply Company, 148 So.2d 326 (La. App. 3rd Cir.1962)." 341 So.2d at 75.
Appellants' specifications of error will be reviewed in accordance with the foregoing standard of review.

SPECIFICATION OF ERROR NO. 1
Appellants maintain that the permit application filed by IT was incomplete and the Commission erred in acting upon it. Specifically, appellants contend that the application contained incomplete information with respect to existing water wells on the proposed facility site and applicant's financial responsibility.
Rules and regulations for hazardous waste management systems such as the proposed facility are set forth in the Hazardous Waste Management Plan ("HWMP"), promulgated by the Louisiana Department of Natural Resources. See LSA-R.S. 30:1135. Among other things, the HWMP sets forth the information which must be included in a permit application. HWMP sec. 5.3.3A(13) requires that the following information be included in a permit application:
"Site Description. Attach site map indicating contours (1' in Coastal Zone, 5' elsewhere), property lines, houses, roads, wells, and other physical features within 2 miles of site in rural (unzoned) areas and ½ mile in urban (zoned) areas. Schematic plans of facilities required with Part I include location and identification of buildings, wells, lagoons, etc. (Detailed plans are required with Part II)."
HWMP sec. 5.3.4A(4)(b) requires an applicant to provide the following:
"Map of all water wells, operating or abandoned, within the site and within 2,000 feet of the site perimeter and all public water wells within 2 miles including:
"i) Depth of wells;
"ii) Amount of pumpage;
"iii) Water level depth (annual maximum and minimum);
"iv) Water analysis from water well nearest the disposal site."
In its application, IT provided the required information only for wells in the area which were registered with the United States Geodesic Survey. At the Commission hearing, appellants introduced evidence of at least twenty additional, unregistered wells within two thousand feet of the facility site, including one on the site itself. The Commission ruled that the HWMP required information only as to registered wells.
The district court concluded that the Commission's ruling was arbitrary and unreasonable. However, the court noted that in deciding to issue the permit the Commission had the benefit of the additional well information furnished by appellants. Therefore, the court concluded that the Commission's ruling with respect to the hydrology of the site was reasonable since it was based upon this additional information.
We pretermit the question of whether the Commission was reasonable in concluding that the HWMP requires information only with respect to registered wells.[1] Assuming, *1118 arguendo, that it is not restricted to registered wells, there is no error in the trial court's ruling or the Commission's decision. There is no requirement in the HWMP that an application must be rejected if it is not complete in every detail. Such a requirement, in the complex and technical areas covered by the HWMP, would generate unnecessary burden and delay. In the instant case, the Commission had before it and took into consideration all of the information relative to water wells alleged to be missing from the application. The record before us indicates that the issue of site hydrology was thoroughly investigated and considered. The fact that the initial application did not contain all of the information eventually presented to the Commission does not provide a basis for nullifying the Commission's eventual ruling.
HWMP sec. 5.3.4A(9) requires submission of the following financial responsibility information in an application:
"Financial Responsibility
"a) Financial structure of operating unit, including:
"i) Capital structure and principal ownership;
"ii) Liability coverage:
Personal injury, employees and public
Property damage"
Appellants contend that "the application contains no financial information about IT Corporation, is confusing and demonstrates that IT does not have insurance for the Louisiana facility and has not demonstrated it can get such insurance."
Appellants also point to an inconsistency in the application with regard to the actual ownership of the facility. Throughout the application the owner of the facility is listed as the IT Corporation, but at one page the owner is identified as IT Corporation of Louisiana, a subsidiary of IT Corporation. As the Court below noted, testimony of the IT executive officers demonstrated that the facility was to be owned by IT Corporation.
The Commission concluded that IT presented sufficient evidence with regard to financial responsibility. As noted above, there is no provision in the HWMP which prohibits supplementation of an application by evidence in testimony during the permit hearing. We agree with the court below that the evidence presented demonstrates that IT is a substantial corporation of means with the ability to obtain adequate liability insurance coverage. Additionally, we note that the hazardous waste permit issued by the Commission requires IT to establish a "closure fund" and to provide evidence of liability insurance as required by the HWMP prior to the acceptance of any waste at the site. The Commission's decision in this regard was reasonable.

SPECIFICATION OF ERROR NO. 2
Appellants contend that the site for the proposed facility does not meet the requirements of the HWMP. Specifically, they contend that the proposed site is not hydrologically isolated as required by the HWMP. HWMP sec. 8.3.4A provides as follows:
"General requirementsites utilized shall be isolated from adjoining land and from subsurface and surface waters naturally, or by created barriers."
With regard to this specification of error, the district court made the following observations and findings:
"IV. PROPRIETY OF THE ISSUANCE OF THE PERMIT
"In what concerns the merits of whether the Commission should have granted the three permits and authorized the construction of this plant, the appellants attack the Commission's approval of the site selected by IT Corporation. It is contended that the site selected in Ascension Parish failson at least four groundsto meet the criteria established by IT Corporation in the study made by it for the Department of Natural Resources before the application was made....
"A. Hydrology

*1119 "As pointed out by counsel for the appellants, David L. Bauer, IT Corporation's Vice President, testified that one of the most important criteria in the selection of a site for a hazardous waste facility is that the site should be hydrologically isolated from usable waters. (Volume XV, page 89.) Mr. Walter Loo, a geohydrologist who served as IT Corporation's expert in this area, testified that there was nothing in the site, specifically hydrology or geohydrology, which wil be adversely affected by the proposed facility. (Volume XIII, page 86.) He said that the site was favorable to geohydraulic condition and meets the requirements of the Hazardous Waste Management Plan. (Volume XIII, pages 87 and 88.) However, on cross-examination by appellants' counsel, Loo acknowledged that the shallow water aquifer under the site is connected with the Mississippi River, but he did state that the water table aquifer is not connected with the river and is independent of the shallow water aquifer. (Volume XXV, page 11.) He was also of the opinion that the shallow water aquifer would be isolated by the surface construction activities. (Volume XXV, pages 11-12.) After hearing the evidence, the Commission specifically made the following findings:
"`3 aquifers identified as the water table aquifer, the shallow aquifer and the Gonzales aquifer lie under the proposed site.
"`The shallow aquifer is hydrologically connected to the Mississippi River'.
"`The water table aquifer is hydrologically connected to the Mississippi River.'
"Counsel for the appellants then submits that IT Corporation for the first time furnished evidence that it planned to construct a slurry wall as a containment at the instance of its contractor, Bechtel Corporation, because of the high horizontal permability of the water table under the site and the potential for seepage of hazardous wastes. The slurry wall was not a part of the application as a prospective improvement and is not a condition of the permit.
"There is no question about the importance of this site in being independent in its hydrology from the other usable waters in the area and from the Mississippi River which is used as a drinking water source by several communities south of the proposed installation. As evidenced by some of the testimony of the experts, as well as the finding of the Commission, it is apparent that there is a potential for horizontal seepage. Be that as it may, the Commission apparently felt that not only was this potential minimal, but the installation of the improvements to be constructed by IT Corporation, coupled with the monitoring requirements, will prevent any harmful seepage of hazardous wastes. As stated by the Court initially, the law accords a presumption of validity to the Commission's determination in this respect. While the Court readily comprehends the possibilities that exist for contamination, in view of the safeguards required of the permitee, the hydrology of the site is not such as to pretermit its use and the Court is unable to conclude that the Commission was unreasonable in permitting IT Corporation the use of the subject site."
This specification of error challenges a factual determination of the Commission that the site selected is suitable for the proposed project. LSA-R.S. 49:964 G requires appellants to demonstrate that the Commission's determination is manifestly erroneous. They have failed to do so.

SPECIFICATION OF ERROR NO. 3
Appellants contend that the hearing officer erred in refusing to permit them to cross-examine an IT witness on certain issues. During the course of the hearing appellants cross-examined the witness, John Schofield, about a process called stabilization. This process, in which waste residue from the incineration process is combined with other materials, produces a substance called Stablex. Stablex is a concrete-like material which is poured into clay lined *1120 landfills and allowed to harden. The combined effect of the clay lining and stabilization of wastes acts to minimize the likelihood that wastes will escape into the substrata soil and underground water.
In cross-examining Schofield, appellants sought information about heat generated by Stablex as it dries. Appellants contended that this information was necessary to evaluate the effect which Stablex might have on the clay lining. Schofield testified that Stablex cools, rather than heats up, as it hardens but refused to provide specific information about the heat given off by the material. Schofield's refusal was based on the fact that IT had obtained a patent on the Stablex process and that the requested information together with that contained in the patent papers would enable business competitors to duplicate the proprietary secrets.[2] The hearing officer recognized IT's proprietary interest in the process and prevented further cross-examination by appellants' counsel with regard to the heat given off by the Stablex material. The hearing officer noted that LSA-R.S. 30:1077 (actually 30:1076 A) and 49:956(8) affords protection from public disclosure for such proprietary information.[3]
Appellants contend that the hearing officer erred in refusing to order Schofield to provide information with regard to heat produced by the Stablex process. They maintain that the two statutes relied upon by the hearing officer are inapplicable to the instant situation.
Appellants assert that LSA-R.S. 30:1076 A has no application because there was no request in writing to preserve the confidentiality of the information. IT contends that no such request was made because its permit application did not envision use of the Stablex process. Consequently, IT notes, there was nothing disclosed in the application which it could have sought to protect.
Appellants also maintain that LSA-R.S. 49:956(8) does not protect the requested information because it only applies to "[r]ecords and documents, in the possession of any agency or of any officer or employee thereof." Since the requested information was not in the possession of any agency or officer or employee of any agency, it is not protected, appellants argue.
It is important to note that IT is not seeking to withhold the information in question from the Commission, its staff or the Louisiana Department of Natural Resources.[4] *1121 Those entities never requested that information and apparently concluded that the information which was provided was sufficient for purposes of reaching a decision on the permit application. It is correct that the above-cited statutes did not apply to the situation at hand. However, those statutes would prevent public disclosure of the trade secrets in question if any of these agencies had requested and received this information or if IT had voluntarily disclosed it in the application. It would be anomalous and work a manifest injustice to hold that those trade secrets are not subject to protection because the agencies did not consider them germane to their deliberations.
In addition to the above-cited statutes, other legislative enactments afford protection for trade secrets. See LSA-C.C.P. art. 1426 and LSA-R.S. 40:636(6). The jurisprudence has also recognized this public policy of protecting trade secrets. Marcann Outdoor, Inc. v. Johnston, 229 So.2d 419 (La.App. 3rd Cir.1969). See generally Martin and Springgate, Protection of a Businessman's Proprietary Information, 32 La. L.R. 497 (1972).
In the instant case, the appellants were the sole seekers of the information in question. The Commission concluded that it had at its disposal all of the information necessary to accept and review the permit application. Under these circumstances, and in light of the public policy in favor of protecting trade secrets, there is no reversible error in the hearing officer's refusal to permit cross-examination of Schofield on the subject of heat generated by Stablex.

DECREE
For the foregoing reasons, the judgment of the district court is affirmed. Costs of this appeal are assessed against appellants.
AFFIRMED.
PONDER, J., assigns special reasons.
PONDER, Judge, concurring.
With some misgiving I have concluded to sign the opinion but wish to assign some reasons.
It is awesome to consider the possible effects of the actions taken by the Louisiana Environmental Control Commission, approved by the District Court, and now being approved by us. Even accepting the arguments of the IT Corporation and the statements by the commissioners in favor of an organized effort by a responsible corporation with state supervision to control the disposal of hazardous waste, one is frightened by the dire consequences of error, accident or mismanagement. These fears are increased by the suggestions that the governmental process including the initial studies by IT Corporation, the approval of the site, the option obtained by IT Corporation on the site recommended by IT Corporation, the application by IT Corporation for permits to build and operate the disposal plant have not been above suspicion. Some of these suspicions have led to other governmental actions, not now before us. The record contains a statement by one of the commissioners vowing considerable misgivings on these points as well as on some deficiencies in IT's application and proposals.
Despite these fears I have concluded that under the strictures of appellate review of all decisions in general,[1] and of administrative decisions in particular,[2] a negative vote would constitute a substitution of my judgment for that of the commissioners who had to investigate, consider and then vote upon the proposals. All the arguments presented to us have been presented to and decided by the commissioners. I hope that they were right in their decision and that their assurances of continued and vigilant supervision by the State of the applicant whose record has not been without fault will be scrupulously kept.
NOTES
[1] "An administrative body can interpret its own rules and such interpretation becomes a part of the rule." Sawyer v. Central Louisiana Electric Company, 136 So.2d 153, 156 (La.App. 3rd Cir.1961).
[2] A copy of IT's patent was admitted into the record.
[3] LSA-R.S. 30:1076 A provides:

"Information obtained under this Chapter or by any rule, regulation, order, or license or permit term or condition adopted or issued hereunder, or by any investigation authorized thereby, shall be available to the public, unless nondisclosure is requested in writing and such information is determined by the department to require confidentiality of reports, photos, documents, tests and work product of the office in order to prevent impairment of an ongoing investigation or prejudice to the final decision of the commission regarding a violation, to protect trade secrets, processes, operations, style or word, apparatus, statistical data, income, profits, losses, or in order to protect any plan, process, tool, mechanism, or compound; provided that such nondisclosure shall not apply to necessary use by duly authorized officers or employees of state or federal government in carrying out their responsibilities under this Part or applicable federal law and further provided that air emission data or discharges to surface and ground waters and the location and identification of any buried waste materials shall not be construed as confidential information."
LSA-R.S. 49:956(8) provides:
"Records and documents, in the possession of any agency or of any officer or employee thereof including any written conclusions drawn therefrom, which are deemed confidential and privileged shall not be made available for adjudication proceedings of that agency and shall not be subject to subpoena by any person or other state or federal agency.
"Such records or documents shall only include any private contracts, geological and geophysical information and data, trade secrets and commercial or financial data, which are obtained by an agency through a voluntary agreement between the agency and any person, which said records and documents are designated as confidential and privileged by the parties when obtained, or records and documents which are specifically exempt from disclosure by statute."
[4] In fact, the record indicates that IT stood ready to provide this information to the Commission and its staff if requested.
[1] Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978)
[2] La.R.S. 49:964 G