439 So.2d 454 (1983)
Malvin SAMPSON, Plaintiff-Appellant,
v.
LINCOLN PARISH SCHOOL BOARD, Defendant-Appellee.
No. 15582-CA.
Court of Appeal of Louisiana, Second Circuit.
September 20, 1983.
*455 Culpepper, Teat & Caldwell by James D. Caldwell, Jonesboro, for plaintiff-appellant.
T.J. Adkins, Dist. Atty. by R.W. Farrar, Jr., Asst. Dist. Atty., Ruston, for defendant-appellee.
Before HALL, MARVIN and SEXTON, JJ.
HALL, Judge.
After notice and a hearing, the appellant was removed from his position as a permanent school bus operator by the Lincoln Parish School Board for failure to keep his transfer equipment in a safe, comfortable, and practical operating condition, one of the grounds for removal specified by LSA-R.S. 17:493.[1] Appellant filed a petition for judicial review in the district court, which affirmed the action of the school board. On appeal to this court the appellant contends that the district court erred in affirming the school board's decision to terminate him for the following reasons: (1) appellant was not given proper notice of the charges against him prior to the hearing; (2) insufficient evidence, mostly hearsay, was offered to establish the charge which is the stated basis for appellant's termination; and (3) appellant's termination was actually based on another charge not proven at the hearing.
By letter of February 4, 1982 from the superintendent of schools, appellant was suspended with pay pending a hearing on the charges contained in the letter. The specific charges listed in the letter were:
"... (1) failure to keep your transfer equipment in a safe, comfortable, and practical operating condition, (2) conduct unbecoming a school bus operator and a female student...."
On February 9 appellant's attorney wrote the superintendent of schools requesting that the charges be made more specific and that he be furnished additional information. The attorney wrote another letter to the superintendent on February 15, again requesting additional information prior to the hearing which had by then been scheduled for February 24. The attorney also requested a closed meeting and that the testimony be recorded. By letter of February *456 17 the superintendent replied, advising that the additional information had been furnished to appellant and referring appellant's attorney to the Lincoln Parish District Attorney who was representing the school board.
Appellant was represented by his attorney at the hearing. The attorney objected to the hearing going forward because he had not been furnished with the specific details of the charges as requested. The objection was overruled and the hearing proceeded. The school board called several witnesses who were cross-examined. Appellant testified on his own behalf.
At the conclusion of the hearing a school board member asked appellant's attorney if he felt he had been given ample time or opportunity to ask all the things he wanted to ask or bring out anything that he wanted to bring out. The attorney replied that he did not want any time for any additional testimony or evidence concerning the charge relative to the operating condition of the bus but wanted the opportunity to have a handwriting expert look at the note which appellant was alleged to have given to a female student and which was the basis for the other charge.
The school board voted by a unanimous 11 to 0 vote to dismiss the appellant as a school bus driver for failure to keep his bus in a safe, comfortable, and practical operating condition. No action was taken on the other charge and the validity of the other charge is not involved in this appeal.
The standard of judicial review of a school board's action is whether there is a rational basis for the board's determination supported by substantial evidence insofar as factually required. The reviewing court must neither substitute its judgment for the judgment of the school board nor interfere with the board's good faith exercise of discretion. The court's inquiry should be limited to a determination of whether the action of the school board was in accordance with the authority and formalities of the tenure law, was supported by substantial evidence, or, conversely, was an arbitrary decision and thus an abuse of discretion. Howell v. Winn Parish School Board, 332 So.2d 822 (La.1976); Allen v. LaSalle Parish School Board, 341 So.2d 73 (La.App.3d Cir. 1976), writ refused 343 So.2d 203 (1977).
Appellant contends that the written charge stated in the superintendent's letter was an insufficient explanation of the nature of the charge facing him and did not constitute due process notice because it merely tracked the conclusionary language of the statute without reciting the facts on which the charge was based sufficiently to enable appellant to prepare his defense. Appellant cites Serignet v. Livingston Parish School Board, 282 So.2d 761 (La.App. 1st Cir.1973) which holds that charges tracking the statute contained in the dismissal notice do not fulfill the statutory requirements and are mere conclusions and that the notice must contain a specific recitation of facts sufficient to afford the dismissed teacher an opportunity for rebuttal.
The substance of the testimony concerning the charge for which the appellant was ultimately terminated related to appellant's failure to have his bus repaired and available for inspection and use prior to the beginning of school and for a month thereafter, a breakdown of the bus after it was put in use, and lack of proper heating in the bus during the cold winter days shortly preceding notice to appellant of his suspension. The evidence showed that there was correspondence and discussion with appellant concerning the situation at the beginning of school and that the heater problem was discussed with him a day or two before the notice of suspension was sent to him. There is no indication that appellant was surprised by any of the specific details of his failure to properly maintain his bus brought out at the hearing. There is no showing that appellant was prejudiced by any failure to have been furnished more detailed information as to the facts on which the charge was based.
The fact that there was no prejudice and that appellant was afforded ample opportunity to prepare for and present his defense is further demonstrated by the colloquy *457 mentioned earlier in this opinion between a school board member and appellant's attorney at the conclusion of the hearing. Counsel specifically stated that he did not want any delay for any additional testimony or evidence in connection with the charge.
As found by the trial court, the proceeding against the appellant was conducted in accordance with the statute and appellant was not prejudiced by any lack of notice.
Appellant contends that the factual finding that his school bus was not in proper operating condition is not supported by substantial evidence and should be overturned. The essence of appellant's argument is that the school board presented only hearsay evidence of the improper operating condition of his school bus.
Contrary to appellant's argument, there is sufficient, substantial, competent evidence supporting the finding that appellant failed to maintain his bus in safe, comfortable, and practical operating condition. It was established that in June 1981 appellant put his bus in a repair shop for extensive repairs. Appellant was unable to pay for the repairs and, therefore, was not able to get his bus out of the shop in time for the required safety inspection by state police on July 30, at which time all of the other school buses were inspected. He did not have his bus available for inspection on August 10 when the state police set up another inspection for buses that did not pass the first inspection. Without notifying school authorities, appellant failed to pick up the children on his route on the opening day of school, August 25. The school board loaned appellant a bus until appellant got his bus out of the shop which appellant promised to do by September 8. Appellant turned in the school board bus on September 19 but when he still did not have his bus on September 21 the school board was required to furnish a bus and a driver for about five days. Finally, on September 28, appellant brought his bus to the school board grounds. The carbon monoxide machine was broken, but the bus was temporarily inspected and approved pending repair of the machine. Appellant was advised by letter that he should keep his bus operational and comfortable at all times or otherwise board action would be necessary. The following day, appellant's bus broke down and it was necessary for the school board to send out another bus and a driver that afternoon.
In early February 1982, in the course of their investigation of the incident in which appellant was alleged to have given an objectionable note to a young female student passenger on the bus, which was the basis for the second charge, and an investigation of another incident involving a fight on the bus, school officials heard complaints from a number of students about the bus being cold and lacking heat during the cold winter days. When school officials discussed the heating matter with the appellant, he admitted that the heaters on the bus were not working properly. In view of his admission the school officials did not believe it necessary to make an inspection of the bus. At the hearing appellant testified that the three heaters on the bus were working but that when operating they caused his batteries to run down and his lights to go out. Appellant testified that it is cold in the back of the bus where the heaters, which are located in the front of the bus, do not reach. He stated that he had bought another heater around Christmas time for installation at the rear of the bus, but had not yet had it installed.
There was evidence that a number of judgments, garnishments, and wage assignments had been filed against appellant, in addition to the evidence that he was not able to timely pay for the repairs done to the bus during the summer prior to the opening of school.
In sum, the evidence established that appellant failed to keep his bus in a safe, comfortable, and practical operating condition during a substantial part of the school year prior to the time he was suspended. In spite of previous leniency on the part of the school officials and warnings that board action would be necessary if he failed to properly maintain the bus, appellant operated the bus without proper heating during *458 severely cold winter days. Undoubtedly appellant's failure to properly maintain his bus was due at least in part to his financial inability to do so. There was substantial evidence supporting the board's decision to discharge the appellant on this statutory ground, and the decision was not arbitrary or unreasonable.
Appellant contends that although the school board voted to discharge the appellant on the charge relating to the operating condition of the bus, the board was improperly influenced by the second charge involved in the hearing which was "conduct unbecoming a school bus operator and a female student". The basis of the second charge was a handwritten note which was handed by the appellant, a black man, to a young white female student who was a regular passenger on the school bus. The note is not in the record but the indication from the record is that it was of sexual or amorous content. There was considerable testimony concerning the note at the hearing. The school board sought to establish that the note was written by the appellant. Appellant denied writing the note and testified that he found the note on the seat of the bus, read it, and later gave it to the young student to whom it was addressed. The evidence at the hearing was clearly insufficient to establish that appellant wrote the note and was plainly insufficient to establish "immorality" or any other statutory grounds for removal of appellant from his position because of the note incident.
The transcript of the school board's deliberations reveals that it was conscientious in attempting to arrive at a fair decision. The evidence concerning the charge of conduct unbecoming a school bus driver was considered, discussed, and clearly rejected by the board as being insufficient. The evidence relating to the charge of failure to properly maintain the bus was carefully considered and discussed on its own merits.
As noted by the trial court:
"The School Board indicated through its deliberations its desire to be fair to the petitioner and to arrive at a fair conclusion. Therefore, the Court specifically finds that the School Board's conclusions from the factual findings were not arbitrary and these conclusions did not constitute an abuse of the School Board's discretion."
For the reasons assigned, the judgment of the district court affirming the action of the Lincoln Parish School Board and dismissing appellant's petition for judicial review is affirmed, at appellant's costs.
Affirmed.
NOTES
[1] LSA-R.S. 17:493

"A permanent school bus operator shall not be removed from his position except upon written and signed charges of willful neglect of duty, or incompetence, or immorality, or drunkenness while on duty, or physical disability to perform his duties, or failure to keep his transfer equipment in a safe, comfortable and practical operating condition, or of being a member of or contributing to any group, organization, movement or corporation that is prohibited by law or injunction from operating in the state of Louisiana, and then only if found guilty after a hearing by the school board of the parish in which the school bus operator is employed. An additional ground for the removal from office of any permanent school bus operator shall be the abolition, discontinuance or consolidation of routes, but then only if it is found as a fact, after a hearing by the school board of the parish, that it is in the best interests of the school system to abolish, discontinue, or consolidate said route or routes. All hearings hereunder shall be private or public, at the option of the operator or operators to be affected thereby. At least fifteen days in advance of the date of the hearing the school board shall furnish the affected operator or operators a copy of the written grounds on which said abolition, discontinuance or consolidation of routes is sought. The operator or operators affected shall have the right to appear in their own behalf and with counsel of their selection, and be heard by the board at the hearing. Nothing herein shall impair the right of the parties to appeal to a court of competent jurisdiction...."