386 So.2d 1056 (1980)
Eileen Y. JACOMET, Plaintiff-Appellant,
v.
ST. LANDRY PARISH SCHOOL BOARD and Administrator, Office of Employment Security of the Department of Labor, Defendants-Appellees.
No. 7699.
Court of Appeal of Louisiana, Third Circuit.
July 18, 1980.
Rehearing Denied August 27, 1980.
*1057 Jo Ann Nixon, Lafayette, for plaintiff-appellant.
Young & Burson, I. J. Burson, Jr., Eunice, James A. McGraw, Baton Rouge, for defendants-appellees.
Before CULPEPPER, SWIFT and STOKER, JJ.
STOKER, Judge.
The claimant, Eillen Y. Jacomet, appeals from a judgment of the District Court which affirmed a decision of the Board of Review of the Division of Employment Security, Department of Labor, State of Louisiana, wherein the claimant was denied unemployment compensation benefits on the ground that she had been discharged for misconduct connected with her employment. The employer, the St. Landry Parish School Board, opposes plaintiff's claim for these benefits.
The record shows that on May 5, 1978, plaintiff was discharged from her employment by the St. Landry Parish School Board. She filed a claim for unemployment compensation benefits on May 21, but she was disqualified by the Office of Employment Security upon a finding by the latter that she had been discharged for misconduct connected with her employment. The grounds for disqualification found by the Office of Employment Security were that Miss Jacomet had been discharged for failure to perform assigned duties after being reprimanded. She appealed this initial determination which was affirmed by the Appeals Referee. The Appeals Referee's decision was appealed to the Louisiana Board of Review which affirmed the Tribunal's determination.
She subsequently filed the instant suit for judicial review. The Administrator of the Office of Employment Security filed an answer and return and prayed that the decision of the Board of Review be reversed. The St. Landry Parish School Board answered, denying all of plaintiff's allegations.
The matter was heard on October 26, 1978. The Administrator waived his appearance, and the attorney for the St. Landry Parish School Board failed to appear. Counsel for plaintiff presented his argument, and the trial court took the matter under advisement. Judgment was subsequently rendered on December 1, 1978, affirming the Louisiana Board of Review's decision.
*1058 Apparently poor relations existed between the claimant and her immediate supervisor, Director of Auxiliary Services of the St. Landry Parish School Board, Mr. Clifford Lemelle. We consider only the charge against Ms. Jacomet that she failed to ask for assignment of work for a period of at least three days. Eliminating all irrelevant testimony and evidence, as well as hearsay or other incompetent evidence, we agree with the Trial Judge that there is sufficient evidence to support the findings of fact of the Board of Review.
Mr. Clifford Lemelle's testimony before the Appeals Referee consists in part of the following:[1]
"* * * I'd like to go back now to the idea ofthe weeks that led to thisthe 1st of May to be exact. I had been on a conference the entire week prior to this. When I returned to my office on the Monday, Ms. Jacomet came in to see me that Monday morning and asked me if I had some work to do. Well, after having just returned, I said to her, let me get the work organized and I will get back with you later on the work. Come and see me, and I will then have my work organized. This was a Monday. Ms. Jacomet reported to work every day that week. However, she did not come back to see me until Friday. She was at the office. If she had reported to other departments to find workI noticed that she was talking within other departments. I'd like to make this comment that onI'm not sure of the dates. It could've beenin fact, I have it right here. Yes. On that Monday afternoon, May 1, one of the secretaries in the area, the pool where Ms. Jacomet was stationed, reported to one of the supervisors that the loud speaker in the PA system was loud and she had almost every school in the system to call. She could not carry on the business over the telephone that loud. She asked Ms. Jacomet to lower the speaker. Ms. Jacomet either verbally said no or ignored the request. The same secretary who made this request asked one of the nearby supervisors to ask Ms. Jacomet to lower the speaker. Ms. Jacometthe supervisor then came to me. When I walked into the area where the secretaries are located, Ms. Jacomet immediately asked me what's the problem. I said what's the problem! She made a statement to this effect. There is no problem. What do you want? There is no problem. I said no you're right. There is no problem. I immediately lowered the speaker. All right. That was the Monday. Whether or not this had anything to do with her not reporting to me the rest of the week, I don't know, but I know she did not report to me the rest of the week until the Friday, and the reason she came the Friday was because there was some type of confrontation going on Friday. Don't know what it was, but I know that was the first time during that week other than the Monday morning that she had come back to me to find out. I did have work for her to do. I said that to her on a Friday morning when she came to me. I said yes Yvonne I do have some work. In fact, I had work the whole week, and I've asked other secretaries to have to do my work. Now, that was the week of thewhen she was dismissed that Friday, which was May 5. Now, there were otherduring the yearother incidents of some confrontation that went on between Ms. Jacomet and some of the other secretaries at the office. In addition to that, there were several occasions where she was found at her desk to be reading magazines when there was work and a request by other supervisors to assist the other secretaries, which she did not do."
Ms. Jacomet gave testimony denying Mr. Lemelle's accusations and placing matters in a decidedly different light from that of Mr. Lemelle. Nevertheless, the determination of credibility is ordinarily a matter for the administrative agency, not for the court on judicial review. The *1059 courts, however, do have the ultimate duty, in such review of administrative findings, to determine whether sufficient evidence supports the administrative findings. Lee v. Brown, 148 So.2d 321 (La.App.3rd Cir., 1962); Vandike v. Brown, 139 So.2d 803 (La.App.3rd Cir., 1962) and Turner v. Brown, 134 So.2d 384 (La.App.3rd Cir., 1961).
The Appeals Referee's opinion (Tr. 63) contains the following:
"From the evidence and facts presented in this case, it is concluded that the claimant was discharged from her employment due to her failure to ask for her work assignments, which she was required to do. The facts indicate that the claimant failed to check with her supervisor for three days to see if he had any work for (sic) to perform. The facts further show that the claimant had problems getting along with her co-workers, even though they had been counselled and their cooperation had been requested. Under the circumstances, it is determined that the claimant's separation from the employment was under disqualifying conditions and the disqualification as assessed by the Agency was warranted.
IT IS ORDERED that the determination of the Agency disqualifying the claimant for benefits effective May 19, 1978, be affirmed."
As stated above the decision was affirmed by the Louisiana Board of Review for the Office of Employment Security. (Tr. 78)
The standard of judicial review of unemployment compensation cases is established in LSA-R.S. 23:1634.[2] The First Circuit expounded on that statute in Dorsey v. Administrator, Louisiana Department of Employment Security, 353 So.2d 363 (La. App.1st Cir., 1977), writ refused 355 So.2d 549 (La. 1978) as follows:
"Judicial review in questions such as this is limited to questions of law unless the evidence is insufficient to support the findings of fact of the administrative agency or the evidence shows that a fraud has been perpetrated."
This well established principle had been stated many times before; for example, the Third Circuit in Lee v. Brown, 148 So.2d 321 (La.App.3rd Cir., 1962) stated that on review by courts of unemployment compensation awards, findings of fact by the review board are conclusive if supported by sufficient evidence.
In the present case the Office of Employment Security determined petitioner was discharged for: "... failure to perform assigned duties even after being reprimanded, which is misconduct connected with the work."
We agree with the opinion of the trial judge as stated in his Reasons for Judgment:
"The Court observes that the record in this case and the investigation made leaves a great deal to be desired, in questioning and reporting in connection with a claim.
This Court cannot say the administrative units did not have sufficient facts upon which to base a legal decision."
There was testimony at the Appeals Tribunal of several problems that Ms. Jacomet might have been causing in the office. But these instances were not responsive to the charge asserted as ground for her termination, which was failure to perform assigned duties even after being reprimanded.
This charge of failure to perform her duties is very broad, but a review of the record shows testimony of her superiors sufficient to provide the necessary evidence *1060 for the factual determination that plaintiff was guilty of misconduct connected with her employment in the form of failure to perform her duties.
For the reasons herein assigned the judgment appealed from is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.
NOTES
[1] In quoting this testimony we do not wish to imply that it is all relevant or competent. We quote it as representative of the narrow relevant reason (failure to report for assignment of work) given for the dismissal.
[2] LSA-R.S. 23:1634 provides in pertinent part:

"In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law. No additional evidence shall be received by the court, but the court may order additional evidence to be taken before the board of review, and the board of review may, after hearing such additional evidence, modify its findings of fact or conclusions, and file such additional or modified findings and conclusions, together with a transcript of the additional record, with the court."