CIACCIO, Judge.
Defendants appeal from the judgment of the district court reversing a decision of the Louisiana State Racing Commission. We affirm.
On July 16, 1981, the Stewards at Evangeline Downs issued ruling No. 37, concerning the racehorse, Wild Wing Fighter, and ruling No. 38, concerning the racehorse Mistyano, which horses were owned by Joyce Ruth and trained by Bobby Gran-ger. The Stewards disqualified Wild Wing Fighter as the winner of the third race at Evangeline Downs on June 27, 1981 and redistributed the purse monies of that race, after finding that a urine sample taken from the horse proved positive for the drug “Prednisone.” The Stewards also disqualified Mistyano as the winner of the fifth race at Evangeline Downs on June 28, 1981 and redistributed the purse monies of that race, after finding that a urine sample taken from the horse proved positive for the drug “Prednisone”. Additionally, the trainer was referred to the Louisiana State Racing Commission for whatever action they deemed necessary.
The Louisiana State Racing Commission conducted a hearing on these matters on November 19, 1981. The Commission concluded, in Ruling No. 37, that the trainer *19 violated LAC 11-6:53.15[1] of the Rules of Racing. They affirmed the ruling of the Stewards and further ordered the trainer to be suspended for thirty (30) days beginning December 1, 1981 and to be denied all privileges of race tracks under the jurisdiction of the Commission during the period of his suspension. The Commission concluded, in Ruling No. 38, that the trainer had violated 11-6.53.15 of the Rules of Racing and imputed knowledge of this violation upon the owner “pursuant to the close relationship that an owner and trainer have as recognized by the Rules of Racing as well as the practice in the racing industry.” The Commission affirmed the ruling of the Stewards and further ordered an additional fifteen (15) day suspension of the trainer for this violation.[2]
After filing a petition for review with the district court, the plaintiff was granted a motion to remand the case to the Louisiana State Racing Commission. The purpose of the remand was to take the testimony of Dr. Paul Hyde, a biochemist, regarding the validity and the conclusive effects of the laboratory testing procedures utilized by the Commission.
Dr. Hyde, on June 24, 1982, testified that the Mass Spectrometer is a testing procedure which constitutes the final concrete evidence of the presence of a particular chemical compound, (tr 334) Additionally, Dr. Hyde testified that he “would not call a Prednisone or Prednisolone without the Mass Spectrometer].” (tr. 334).
At the conclusion of Dr. Hyde’s testimony, the Commission voted unanimously to reaffirm its original decisions.
On March 21, 1983 the district court issued a judgment on the defendant’s petition for judicial review. The judgment reversed the decision of the Louisiana State Racing Commission, on evidentiary grounds.
We affirm the judgment of the district court, without concurring in its reasons for judgment, and on different grounds.
The standard for review of a case such as this was discussed in the recent decision by this Court in Hanson v. Louisiana State Racing Commission, 436 So.2d 1308 at 1309 (La.App., 4th Cir., 1983):
When one is aggrieved by a final decision in an adjudication proceeding, he is entitled to judicial review under the Administrative Procedure Act. R.S. 49:964(A) See: Buras v. Board of Trustees of Police Fund of New Orleans [367 So.2d 849 (La.1979) ], supra. The standard for the review, of evidence in such cases is set forth in Allen v. LaSalle Parish School Board, 341 So.2d 73 at 75 (La.App., 3rd Cir., 1977):
The jurisprudence of our state is abundantly clear that where an administrative agency or hearing body is the trier of fact the courts will not review the evidence before such body except for the following limited purposes: (1) to determine if the hearing was conducted in accordance with the authority and for *20 malities of the statute; (2) to determine whether or not the fact findings of the body were supported by substantial evidence; and, (3) whether or not the hearing body’s conclusions from these factual findings were arbitrary or constituted an abuse of the hearing body’s discretion. Stewart v. East Baton Rouge Parish School Board, 251 So.2d 487 (La.App. 1st Cir.1971); Moffett v. Calcasieu Parish School Board, 179 So.2d 537 (La.App. 3rd Cir.1965); Barber v. Lake Charles Pipe and Supply Company, 148 So.2d 326 (La.App. 3rd Cir.1962).
The reasonable discretion of the administrative body will not be set aside absent an abuse of discretion. Cannatella v. City Civil Service Commission of New Orleans, 381 So.2d 1278 (La.App., 4th Cir., 1980) writ den. 384 So.2d 793 [La.1980]. The issue of credibility of witnesses is a matter addressed to the Commission and not for the court. Jacomet v. St. Landry School Board, 386 So.2d 1056 (La.App., 3rd Cir., 1980) writ den. 393 So.2d 745 [La.1980]. However, the courts have the ultimate duty to determine whether the findings of the administrative body are supported by sufficient evidence. Jacomet v. St. Landry School Board, supra.
After the petition for judicial review was filed, plaintiffs learned that the Louisiana State Racing Commission declined to discipline two other trainers whose horses were alleged to have shown evidence of Predni-sone in urine samples. Both cases were dismissed because of the testimony of Dr. Paul Hyde, a biochemist who was on the staff of the LSU School of Medicine, specializing in equine chemistry, and who had performed personal services for the Racing Commission on other occasions.
On remand, in this case, Dr. Hyde again testified that the presence of Prednisone could only be accurately assessed by the use of Mass Spectrometry. He had earlier testified that the Commission did not own and/or utilize such an investigative piece of equipment but relied on Thin Layer Chromatography, which Dr. Hyde described as inadequate.
The record reflects that the Commission acknowledged that this identical testimony, which had cast doubt on the validity of the findings of the State laboratory, was the basis for the action of the Commission in reversing the Stewards’ findings in the two other Prednisone cases pending before it, namely Sálicos and Brasseaux, both of which cases were dismissed by the Commission and the prior disciplinary action of the Stewards was vacated.
At the conclusion of Dr. Hyde’s testimony plaintiffs’ attorney moved for the dismissal of the charges against his clients citing the earlier testimony of Dr. Hyde, the identity of factual circumstances and the prior action of the Commission (Tr. p. 348), but the Commission refused to dismiss the charges against plaintiffs and reaffirmed the imposition of the penalties decreed in the original hearing.
We can find no factors which would distinguish this case from the two other Pred-nisone cases dismissed by the Commission. In all three cases the Commission’s chemist failed to use a Mass Spectrometer to determine the existence of the drug, Prednisone, and the Commission’s own expert, Dr. Hyde, testified that he would not confirm the existence of the drug without the use of this technique. Since the Commission apparently concluded in the Sálicos and Brasseaux cases that the laboratory tests run by the State Chemist were insufficient to prove the existence of Prednisone and, thus, that the charges in those two cases should be dismissed, for the Commission in this case to hold otherwise would constitute a denial of equal protection of the law and such action would be arbitrary and discriminatory and an abuse of its discretion, in violation of Article 1, Section 3 of the Louisiana Constitution of 1974 and the Fourteenth Amendment of the United States Constitution.
Under both the Fourteenth Amendment of the United States Constitution and Article 1, Section 3 of the Louisiana Constitution of 1974, no person can be denied the *21 equal protection of the law. And, the right to equal protection applies to every kind of state action, whether by law or the action or rules of an administrative agency. Spears v. Department of Corrections, 402 So.2d 203 (La.App., 1st Cir., 1981).
Because we decide this case on this constitutional ground, we do not address the other procedural and evidentiary issues urged by plaintiffs in their appeal.
For the reasons assigned the judgment of the district court is affirmed at appellant’s cost.
AFFIRMED.
REDMANN, C.J., dissents with written reasons.

. LAC 11-6:53.15 provides:
"53.15 When a report is received from the chemical analysis of blood, saliva, urine, or other samples taken from a horse indicate the presence of a forbidden narcotic, stimulant, depressant, or analgesic, local anesthetic or drugs of any description, not permitted by LAC 11-6:54, this shall be taken as prima facie evidence that such has been administered to the horse. Such shall also be taken as prima facie evidence that the owner, and/or trainer, and/or groom has been negligent in handling of the horse. At the time of these races, LAC 11-6:54 only permitted the use of bleeder medication drugs.

. One found responsible for violating LAC 11-6:54 shall be subject to the provisions of 11-6:53.19:
The trainer of the horse may, after a hearing of the stewards, be suspended or ruled off, if the stewards conclude that the drug contained in the sample could have produced analgesia in, stimulated, or depressed the horse, or could have masked or screened a drug, not permitted by LAC 11-6:54, that could have produced analgesia in, stimulated or depressed the horse. The stable foreman, groom, and any other person shown to have had the care or attendance of the horse may be suspended or ruled off. The owner or owners of a horse so found to have received such portion of the purse or sweepstakes and any trophy in such race, and the same shall be distributed as in the case of a disqualification.