570 So.2d 56 (1990)
JOSEPH C. CANIZARO-901 LIMITED PARTNERSHIP
v.
STATE of Louisiana, DEPARTMENT OF PUBLIC SAFETY, OFFICE OF STATE FIRE MARSHAL and Willie Miller in His Official Capacity as Louisiana State Fire Marshal and the Fire Marshal Board of Review.
No. 89-CA-0439.
Court of Appeal of Louisiana, Fourth Circuit.
October 26, 1990.
*57 David J. Krebs, Timothy D. Scandurro, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for plaintiff-appellant.
Before SCHOTT, C.J., and BARRY, WARD and WILLIAMS, JJ., and HUFFT, J. Pro Tem.
BARRY, Judge.
Joseph Canizaro-901 Limited Partnership [Canizaro] submitted plans to the State Fire Marshal for construction of the base building and elevator lobbies of the LL & E Tower. In a July 9, 1985 letter the Fire Marshal advised that the drawings and specifications complied with the laws, codes, rules and regulations subject to several requirements.
Item 3 related to the requirement of two remotely located exits. Item 9B related to compliance with Section 506.6(a)l of the Standard Building Code [SBC] (originally the Southern Standard Building Code, later the Standard Building Code), 1979 edition as revised:
Separate elevator lobbies from the remainder of the building where sprinklered, by smoke barriers.
The Fire Marshal's letter further stated: "This review does not apply to future tenant or undeveloped spaces. Before any work is commenced in that area, plans and specifications shall be approved by this office."
On August 12, 1985 Canizaro's architect responded in writing to the Fire Marshal's requirements. Response 3 related to remotely located lobby exits, was circled, the left margin contained a notation, and at the bottom of the page Clinton Dobson, the Fire Marshal's architect who drafted the initial review of the plans, noted that 3 still applied and if Canizaro wanted an appeal, it could be taken. Dobson signed and dated (9/18/85) his notation and wrote that carbon copies be sent to pertinent offices and placed in the file. An "ok" was written next to Response 4g.
In the same August 12, 1985 letter Response 9B stated:
It is submitted that elevator lobby separation is not required in the business occupancy, per the exception in the 1983 SBC edition, as revised.
Dobson made no notation as to Canizaro's Response 9B as he had with Response 3. The Fire Marshal returned the August 12 letter with notations to Canizaro's architect. There was no further correspondence relative to the elevator lobby separations. Construction permits were issued by the City of New Orleans.
The base building, elevator lobbies and a number of floors were completed when specifications for the 20th floor corridor were submitted to the Fire Marshal in November or December, 1986. In a letter *58 dated December 24, 1986[1] the Fire Marshal's architect, Henry Reed Sr., stated that those specifications complied with the law, subject to a number of requirements including Item 2A which specified compliance with SBC Section 506 (1979 edition as revised):
SBC 506.6(a)l. Separate elevator lobbies from the remainder of the building, where sprinklered, by smoke barriers.
In a February 23, 1987 letter Canizaro's architect responded to an inspection report as to the SBC requirement:
SBC 50.6.1 [sic], Elevator lobby separation: The plans were reviewed in the attached Fire Marshal letter of 9 July 1985, replied to by us in the attached letter of 12 August 1985, the return of which annotated by Clinton Dobson 18 September 1985 takes no exception to our reply. Closure was not required at that time, based upon the attached ruling of Jerry Jones, 18 September 1984.
Canizaro's architect cited a September 18, 1984 memo from Jerry Jones, the Fire Marshal's chief architect, sent to the Plan Review and Technical Division of the Fire Marshal to explain the requirement of elevator separators in high rise buildings according to the 1979 edition of the SBC (unchanged from 1979 to 1982 as to the Section 506 requirement) and the exemption for elevator lobbies in office buildings in the 1983 and 1984 revisions. Jones stated that "[d]ue to the many appeals concerning elevator lobby separations in high rise buildings the policy would be:
Due to the changes of the requirements for elevator lobby separation in the Standard Building Code, it has been determined that this office shall not require elevator lobbies in high rise office buildings, reflecting the revisions to the 1982 edition of the Standard Building Code. (Jones' emphasis.)
The Fire Marshal refused to approve the 20th floor plans. Canizaro initiated an appeal based on the receipt of a permit to build the lobbies as originally submitted.
In response to a letter dated April 20, 1987 from Lew Bremenstul, Jr., Canizaro's supervisor of interior construction, Henry Reed Sr. stated the Fire Marshal's policy in an April 27, 1987 letter (quoted in pertinent part):
In response to your question concerning the `new code requirement' on this previously reviewed building shell, the following statement will clarify our position for smokeproof elevator lobbies in high rise buildings. We are fully aware of the past waiver of this requirement in 1984 based on the 1983 revisions to the 1982 edition of the Standard Building Code. You should be aware that neither the 1984 revisions to the 1982 code, nor the 1985 edition of the Standard Building Code contained the deletion of the elevator lobby requirement.
* * * * * *
In this particular case, the LL & E Tower building shell was constructed under a determination based on the 1983 revisions to the code. Apparently several floors were also finished out without elevator lobby separation. The determination was expressly limited in scope and was not to be taken as a precedent for future work. This determination is hereby declared null and void.
The new project today in question is required to comply with codes and regulations currently in force (see LRS 40:1578.6 and LAC 17-4.4) and these include separation of elevator lobbies. While it is not our intention at this time to order that the elevator lobbies on floors which are not occupied be corrected to comply with the current code, future renovations of similar scope on floors already built out will be reviewed under the codes in force at the time of review.
On July 16, 1989 the Fire Marshal Board of Review upheld the Fire Marshal's decision to require the elevator lobby separations, and suggested as an alternative the use of a "pocket door" operated by emergency *59 power and activated by a smoke detector.
Canizaro filed for review in the district court which remanded the matter to the Fire Marshal Board of Review for a full hearing. After a hearing on December 10, 1987 the Board concluded:
(1) Completion of any floor constitutes new construction of the entire floor requiring elevator lobby seperation [sic].
(2) Lack of elevator lobby seperation [sic] in a fully sprinkled [sic] high rise building is a serious life safety hazard.
Canizaro appealed and the district court affirmed the Fire Marshal Board of Review. The trial court's reasons state in pertinent part:
The Fire Marshall [sic] first contends that the building was never approved without the separations. However, as shown by the 901 Limited's Exhibit 5, the Fire Marshall [sic] acknowledged that the requirement for separations would be waived if a party specifically requested. There is little question in the Court's mind but that the building was initially approved without the elevator lobby separations.
The second contested issue concerns the Fire Marshall's [sic] contention that the construction in finishing out the shelled floors is `new construction', and therefore the construction must comply with the 1985 version of the Standard Building Code which requires elevator lobby separations. Plaintiff maintains that the Fire Marshall [sic] is trying to require existing construction to be modified or altered, and the Fire Marshall [sic] can only mandate that existing construction be modified or altered if it presents a serious life hazard. The Court is of the opinion that the decision of the Board of Review should be upheld in that the completion of the uncompleted and unoccupied floors is new construction which must comply with the requirements of the 1985 Code.
Canizaro's appeal argues that the district court erred: (1) by concluding that construction of tenant space in an office building which is otherwise complete and had been approved by the Fire Marshal constitutes new construction of the previously approved areas; (2) by erroneously construing Louisiana's fire safety statutes.
Unfortunately, the Fire Marshal failed to file a brief or appear at oral argument, despite the significant nature of this matter.

STANDARDS AND REVIEW
No structure shall be constructed, and no repair, remodeling, or addition shall be made to any structure "affecting the exits, stairs, seating arrangement, fire protection, or other details of construction" until plans have been submitted to and approved by the Fire Marshal, and comply with all laws and regulations. La.R.S. 40:1574.
Prior to the 1988 and subsequent to the 1985 amendment La.R.S. 40:1578.6[2] provided:
A. Adequate protection for life safety shall be afforded in every structure or movable as those terms are defined in R.S. 40:1573. To afford such protection, all newly constructed structures and movables shall comply with the rules and regulations to be promulgated by the fire marshal in conformity with the Administrative Procedure Act which shall establish as minimum standards the provisions of the Life Safety Code of the National Fire Protection Association, and Section 518Special Provisions for High Rise, of *60 Chapter IV of the Southern Standard Building Code, applicable to high rise structures as both are annually or periodically amended, and the fire marshal shall be the authority having jurisdiction to enforce compliance with such regulations. The effective date for enforcement shall be one hundred eighty days after adoption and promulgation under the Administrative Procedure Act.
* * * * * *
C. The Act shall not apply to existing buildings which were lawfully constructed and maintained unless the fire marshal deems that a serious life hazard exists due to a particular condition, at which time he can require the institution of proper fire protection measures to alleviate the particular hazards noted according to the 1967 edition of the N.F. P.A. Life Safety Code. Such directives of the fire marshal may be appealed to the board of review. (Footnote omitted)
LAC 17-4:1 et seq., rules promulgated by the State Fire Marshal pursuant to authority under La.R.S. 40:1563, provide the requirements to be utilized in inspections of buildings in Louisiana. LAC 17-4:2.1 (published in La. Register June 20, 1983) provides that the NFPA National Fire Codes and the National Building Code shall be used as the references and standards for determinations by the State Fire Marshal. According to LAC 17-4:2.2 (published in La. Register November 20, 1981) all inspections of buildings made or remodeled after January 1, 1982 would utilize the requirements in the 1981 edition of the NFPA Life Safety Code and the 1979 edition of the SBC Section 506.
In 1986 several sections were redesignated and the amended LAC 17-4:2.2 (published in La. Register February 20, 1986) provided that all inspections of buildings constructed or remodeled after September 1, 1986 would be made pursuant to the 1985 edition of the NFPA Life Safety Code and the 1985 edition of the SBC Section 506. LAC 17-4:2.3 (published February 20, 1986) provided that all inspections of buildings constructed and remodeled between September 1, 1981 and September 1, 1986 would utilize the requirements in the 1981 edition of the NFPA Life Safety Code and the 1979 edition of the SBC Section 506.
The SBC section relevant to the construction of Canizaro's core building (listed as Section 518[3] in La.R.S. 40:1578.6 A but referred to in its more current version as Section 506 in LAC 17-4:2.3), Section 506.6.(a)l in its 1979 version referenced by Fire Marshal regulation provided in pertinent part:
Except for the main entrance level, all elevators on all floors shall open into elevator lobbies which are separated from the remainder of the building as required for exit access corridor construction in Chapter 7.
La.R.S. 40:1578.6 A seems to provide that the annual or periodical amendments of SBC Section 518 (now 506) are to be utilized to set the minimum standards for new construction (in 1985, the 1984 revision; in 1984, the 1983 revision of Section 506, both of which contained an exception to the lobby separation requirement). The Fire Marshal regulations clearly utilized the 1979 edition up until 1986 when the 1985 edition was adopted. There was testimony by the Fire Marshal's chief architect that the 1983 and 1984 versions which included the exemption were never adopted in Louisiana.
SBC Sections 506.6.1 and 506.6.2 in the 1985 version, the standard for new construction in 1986 at the time of the 20th floor corridor plans (according to La.R.S. 40:1578.6 A and LAC 17-4.2.3) do not contain an exception for office buildings in the lobby separation requirement:
1. All elevators on all floors shall open into elevator lobbies which are separated from the remainder of the building as *61 required for exit access corridor construction in Chapter 7.
2. Openings in the elevator lobby shall be limited to those required for access to the elevators and for egress from the building. All rooms and enclosures shall have at least one required exit accessible without travel through the elevator lobby. Exit stairways, chutes, janitor closets, guest rooms, service rooms, etc., shall not open into the elevator lobby.

EXCEPTIONS:
1. Elevator lobbies within an atrium.
2. Where there are open exterior corridors the entire width of the building with stairs located at each end and the elevators are located on the exterior of the building, elevator lobbies may be deleted.
3. The main entrance level of the building.
The 1983 and 1984 revisions to SBC Section 506.6 stated as the first exception: "Elevator lobbies in office buildings."
The NFPA Life Safety Code in the 1981 and 1985 editions does not contain an elevator lobby separation requirement in Section 7-4 (which refers to ANSI A17.1 dealing with technical elevator requirements) or in Section 26-4.2 on high rise buildings. Section 26-4.2.1 does require all business occupancy buildings over 75 feet to have an automatic sprinkler system.
The 1967 NFPA Life Safety Code referenced in R.S. 40:1578.6 C as the standard utilized to find a life safety hazard in an existing building does not require an elevator lobby separation.
The Fire Marshal may order an existing building to be modified or altered only if the existing structure "is especially liable to fire or dangerous to life...." La.R.S. 40:1575.
When plans are reviewed and approved, the Fire Marshal returns to the applicant the original set of plans stamped "reviewed" along with a letter which states there has been compliance with the law. If the plans do not comply the Fire Marshal shall furnish a letter which lists the requirements which must be met before construction can begin. Review of the plans (which notes necessary requirements) constitutes compliance with the section if construction begins within 180 days of the review. The review is valid only for that length of time. La.R.S. 40:1574.1.
An owner may file an application with the Board of Review for review. La.R.S. 40:1577. The owner is also entitled to judicial review. La.R.S. 40:1578.5; R.S. 49:964 A.
When an administrative agency or hearing body is the trier of fact, the courts will not review the evidence except for the following limited purposes:
(1) to determine if the hearing was conducted in accordance with the authority and formalities of the statute;
(2) to determine whether or not the fact findings of the body were supported by substantial evidence; and
(3) whether or not the hearing body's conclusions from these factual findings were arbitrary or constituted an abuse of the hearing body's discretion. (Citations omitted).
Hanson v. Louisiana State Racing Commission, 436 So.2d 1308, 1309 (La.App. 4th Cir. 1983), writ denied, 443 So.2d 592 (La. 1983).
When an administrative agency or hearing body is the trier of fact, the courts utilize the manifest error test in reviewing fact calls. Whether the agency acted arbitrarily or capriciously is the test used in reviewing conclusions (from these factual findings) and agency discretion. Johnson v. Odom, 536 So.2d 541 (La.App. 1st Cir.1988), writ denied, 537 So.2d 213 (La.1989). See La.R.S. 49:964. The courts have to decide whether the findings of the administrative body are supported by sufficient evidence. Granger v. Garrett, 445 So.2d 18 (La.App. 4th Cir.1983), quoting Hanson, 436 So.2d at 1309.

THE HEARINGS
At the July 16, 1987 hearing before the Fire Marshal Board of Review Jerry Jones (the Fire Marshal's chief architect) argued that the 20th floor corridor constituted new *62 construction. He testified that Section 506 of the SBC adopted by Louisiana requires elevator lobbies in high rise buildings to be separated from the remainder of the building. Jones stated that the 1979 SBC[4] was in force when construction of the LL & E Tower was started. At the time of the hearing the 1985 Code was applicable pursuant to administrative rules. Those two codes were the only two used in Louisiana. Jones stated that the 1983 and 1984 revisions which exempted high rise office buildings from elevator lobby separations were never adopted by Louisiana.
Jones said that the Fire Marshal's office had been notified that the 1983 (the transcript incorrectly notes 1982) exemption was a mistake. Jones conceded that for a time the Fire Marshal's office recognized the 1983 and 1984 revisions and allowed construction of high rise business occupancies without elevator lobby separations when specifically requested. The 1985 Code removed the exception. Jones stated:
What we have ruled ... is that on the floors that they completed, we weren't going to go back and ask them to retrofit elevator lobby separations in those floors. We felt like that might be a little unreasonable. However, we feel we do have the authority to ask them to do that since our ruling was based on a mistake by a code-writing body. On the floors that are not completed, in other words that are shell floors where they've just constructed the core and haven't occupied the floors, ... the elevator lobby separations would have to be installed when they completed the floor.
Jones testified that completion of a shell floor is considered new work and must comply with the code then in force.
When questioned by a Board member as to the complete reversal of the Fire Marshal office's on that issue, Jones stated there were a number of appeals based on the 1983 revision which prompted the memo stating that the Fire Marshal would accept the revisions and exempt the requirement for lobby separation (the September 18, 1984 memo quoted above). Subsequently the Fire Marshal found the exception was a mistake. Jones stated that in 1987 another memo would rectify the problem.
Lew Bremenstul, Canizaro's manager of interior construction, testified that fourteen floors of the building were built under the different regulations. He stated that the next seven floors to be completed would be mostly multi-tenant, but the core and elevator lobbies including stone floors and mahogany paneling had been finished on those floors. It would require a costly retrofit to put in lobby separations and also pose a difficult problem because those floors used a "z" corridor.
Walter Ernst, Canizaro's architect, noted that the core building was permitted without lobbies. The "z" corridors would pose serious problems in retrofitting because valuable square footage would be lost. He stated whether to have doors separating elevator lobbies is a controversial matter.
Board members questioned Jones as to the Fire Marshal's legal position in light of SBC changes since 1979 and the mistake that remained for years. They questioned the decision to require an owner to retrofit his building. Jones stated that in his opinion the 20th floor corridor was "new construction" and life safety was involved. Conceding that LL & E Tower was fully sprinklered, Jones offered (and the Board accepted) as an alternative a pocket door being considered at that time by the Life Safety Code.
After remand from the district court Jones contended at the hearing that the shell review by the Fire Marshal was a *63 phased review and usually the elevator lobby requirement would not be cited until plans for tenant space were reviewed. Jones defined shell building as the core "including stairs, elevators, mechanical rooms required to service the building and toilets on each floor, and the exterior wall." He cited no jurisprudence or codal authority, but declared it to be the policy. Jones stated: "It's not a written down definition, it's the definition enforced by this office."
Jones conceded that the deficiency was cited in the original plans for the building; however, he did not feel that the citation as part of the core building review made the elevator lobbies part of the existing core building. He testified that under La.R.S. 40:1563 the Fire Marshal had broad powers to take all steps necessary to make sure that every building met a minimal acceptable level of safety.
Jones claimed that the original review letter noted the requirement of elevator lobby separations and there was no written rescission of that requirement. He argued that the Fire Marshal was not arbitrary and capricious in requiring incompleted floors to comply with the current codes because that office had no vested interest other than to protect the life and property from the hazards of fire. Without the separation of the elevator lobbies he felt that the LL & E Tower did not meet the minimal acceptable levels of safety. He noted statistics from the NFPA Fire Protection Handbook.
When asked whether a city building permit could be issued without the Fire Marshal's approval, Jones stated that at the time of the 1987 hearing it was not possible. However, he thought at the time of the original construction one could still obtain a permit without the Fire Marshal's review.[5]
Walter Ernst, one of the original architects, testified that the owner decided to finish out the floor and woodwork of the elevator lobbies on the empty floors because the LL & E Tower was to be a signature building. He stated that the plans originally submitted to the Fire Marshal's Office included those elevators which were totally finished out. After the lack of separations was noted in the original Fire Marshal's review letter, he responded that they were no longer required pursuant to the 1983 business occupancy exception in the SBC. Because the Fire Marshal took issue with only Response 3 relating to a totally different problem, Ernst interpreted that all of his other solutions and comments in the same response letter had been accepted. He argued that was normal practice in such reviews. Ernst stated that if an architect did not hear back and received a building permit, that was the end of the matter.
Lew Bremenstul stated that the cost of retrofitting would be $10,000 per portal or $20,000 per floor for twelve or thirteen unoccupied floors. If the owner used the sliding pocket door suggested by the Board as an alternative at the previous hearing, the cost would be approximately $6,000 a portal.
Roger Tucker, an expert in fire protection design, testified that up until the 1982 edition (identical to the 1979 edition on this point) the SBC required elevator lobby separations. The requested 1983 modification would have excepted sprinklered buildings, but not all high rise office buildings. Due to an error in printing the SBC excepted "[e]levator lobbies in office buildings." In 1984 an attempt to correct the wording was voted down and the mistake continued in the SBC. In 1985 the mistake was removed and the exception as to elevator lobbies was removed (due to insufficient data).
Tucker testified that the opinions of professional organizations differed as to sprinklered buildings. With the split in opinion there was no vote to delete the SBC requirement.
Tucker cited the SBC definition of an existing building as any structure for which a building permit has been issued. *64 Jones said that definition does not appear in Section 506 which was adopted by Louisiana.[6] Tucker testified that a base building must be a standing structure that is self-sufficient on all floors whether occupied or not and then must meet the current code as to individual tenant floors when a permit is sought to build each floor. To get a certification of occupancy in order for a tenant to move into the building, base items must be completed, such as vertical openings and enclosure of stairs. If an elevator lobby is a vertical opening, then it is a base item and not a tenant finish item. If an elevator lobby is part of the core building, then the Fire Marshal would have to find a serious health hazard to require a retrofit.
Tucker testified that the 1981 edition of the NFPA Life Safety Code did not contain a requirement for elevator lobby separations but did require full sprinklering. Similarly the 1985 edition of the Life Safety Code did not require lobby separations. According to Tucker, the Building Officials and Code Administrators International National Building Code [BOCA] only requires sprinklers in high rise buildings and not lobby separations.
Tucker also testified that high rise building codes of Dallas (a uniform building code jurisdiction), Houston, Chicago and New York do not require lobby separations, but do require full sprinklering. He testified that NFPA statistics covering 1980-1984 show a very low percentage of fires which originated in areas of egress in sprinklered and non-sprinklered buildings and no deaths were caused by fires. Tucker testified that the lack of elevator lobby separations was not a serious life hazard because even the Life Safety Code, adopted by Louisiana as the standard, did not require lobby separations. The various codes and documentation on which Tucker's testimony relied were admitted.

ANALYSIS
The record indicates that the hearings were conducted in accordance with the statutory requirements. Our next consideration is whether the Board's findings were supported by substantial evidence and if its conclusions were arbitrary.
We turn to the issues of waiver and approval. Although the Fire Marshal's office argued that it never waived its requirement to have elevator lobby separations, Canizaro contends that the elevator lobbies were approved without separations and any objection was rescinded by the subsequent actions of the Fire Marshal. The trial court pointed out that the Fire Marshal acknowledged that the requirement would be waived if requested and the court properly concluded that the building was initially approved without the need for elevator lobby separations.
The Fire Marshal's April 27, 1987 letter acknowledged "the past waiver of this requirement" and stated that the LL & E Tower shell building was built and several floors finished out under a "determination based on the 1983 revisions to the code." Jerry Jones conceded in testimony that high rise office buildings were built without separations. In light of the letter and the Fire Marshal's actions, we find the trial court correctly determined that the building had been approved without elevator lobby separations.
The trial court upheld the Board's decision that completion of the unoccupied floors was considered new construction and had to comply with the requirements of the 1985 SBC Section 506, the relevant version at the time the 20th floor plans were submitted. Both sides agree that completion of tenant space, including the 20th floor, constitutes new construction and that work must comply with the current Code. Canizaro so concedes in his brief.
The contested question is whether the finished out elevator lobbies on all the floors which had been completed pursuant to the base building specifications and permit constituted part of the existing building. The Fire Marshal considers all elevator lobbies "new work." Jones testified: "We are only requiring the new work, by *65 that I mean the areas of floor that are yet to be completed, to comply with the codes enforced at this time." Yet Jones sought to require the previously completed lobby separations to comply with the new code provisions. Jones said that "uncompleted, unoccupied floors are not considered an existing building." However, we are convinced that approved, completed elevator lobbies must be considered part of the core building. The elevator lobbies, built pursuant to the original specifications which were approved and on which the building permit was issued, were part of the existing LL & E Tower at the time when the 20th floor corridor plans were submitted in 1986.
We find that the trial court manifestly erred by affirming the Board's conclusion that completion of the tenant space constitutes "a new construction of the entire floor...." The elevator lobbies at that point were already part of the existing shell building.
Before the Fire Marshal can order existing construction to be altered or rebuilt, the Fire Marshal must find a serious life hazard or a condition especially liable to fire or dangerous to life. La.R.S. 40:1578.6 C; La.R.S. 40:1575. La.R.S. 40:1578.6 C references the 1967 Life Safety Code. However, LAC 17-4:2.2 (published in the La. Register February 20, 1986) references the 1985 edition of the Life Safety Code and SBC Section 506 as to inspections of new and remodeled buildings after September 1, 1986. Buildings remodeled prior to that date were to be inspected according to the 1981 Life Safety Code and the 1979 SBC Section 506. We must consider whether the absence of the lobby separations constituted a serious life hazard which would require a retrofit, an issue not reached by the trial court. The Board of Review considered that issue as well as any other relevant concerns at two hearings (the second one pursuant to the district court remand for a full hearing on the merits) and concluded the absence was a life safety hazard. Although the evidence presented by the Fire Marshal is sparse, the record before us is complete and will be reviewed. See Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975); Hardy v. Whitney, 480 So.2d 766 (La.App. 3rd Cir. 1985).
During both hearings the Fire Marshal's architect, Jerry Jones, did not demonstrate that the lack of separations constituted a serious life hazard. Jones spoke in broad terms as to the Fire Marshal's power to protect life and property, but he did not put forth any evidence to clearly show that such a hazard was present in the LL & E Tower. His basic argument was that the 1985 Standard Building Code included the requirement for elevator lobby separations, despite the 1983-84 revisions which contained an exception. Richard Tucker, Canizaro's expert, explained there was a division on that issue in the Standard Building Code Congress, and other Codes had deleted the requirement for lobby separations in sprinklered buildings.
Jones opined that the SBC required the elevator lobby separation because fire at any level could spread smoke and products of combustion throughout upper floors and trap occupants. Tucker refuted that concern because sprinklers eliminate many of those problems. Jones never explained how life safety was a factor when some floors did not have them.
Jones analyzed 500 fires involving fatalities which were in the 14th edition of the NFPA Fire Protection Handbook. The vertical spread of fire was responsible for 50% of the fatalities. Yet Jones conceded on cross examination that the 500 fires referred to general fires and were not listed by building types or whether the buildings were sprinklered. The handbook was not admitted or presented to the Board.
Canizaro's expert, Tucker, testified to low NFPA statistics on fires having to do with vertical smoke travel. He noted a division of opinion among professional associations and various codes on the question of elevator lobby separations in sprinklered high rise office buildings. He pointed to the sprinkler mandate of recent codes and the deletion of the lobby separation requirement. He noted that the Life Safety Code, the enforcement tool by statute in *66 Louisiana, does not require elevator lobby separations in a fully sprinklered building. Tucker also testified to the lack of a separation requirement in various codes, including large cities such as Chicago, Dallas, Houston and New York.
It would be ludicrous for this Court to find that the lack of elevator lobby separations is a life safety hazard when the Fire Marshal's chief architect conceded that the Fire Marshal's office allowed high rise office buildings to be constructed without the separations between 1983 and 1985. The Fire Marshal did not order a retrofit of the floors built without the separations. The Fire Marshal presents no basis to support its position that a retrofit is mandatory. The Fire Marshal failed to prove that a life safety hazard exists in LL & E Tower.
Canizaro also persuasively argues that he was entitled to rely on the Fire Marshal's approval. La.R.S. 40:1574.1 C(2) states that the Fire Marshal's review of plans constitutes compliance if construction begins within 180 days. The original building plans including finished elevator lobbies with stone floors and wood paneling received unqualified approval from the Fire Marshal's office. Building permits were issued and the core building was constructed pursuant to the approved plans. The Fire Marshal's position that its determination could be "declared null and void" is untenable. Owners and architects must be able to rely on the Fire Marshal's approval and subsequent issuance of permits.
The Board of Review's findings were not supported by substantial evidence and its action was clearly arbitrary and capricious. The trial court judgment and the Board of Review's decision are reversed.
IT IS ORDERED that the 20th floor plan of the LL & E Tower be approved as submitted to the State Fire Marshal. All costs are to be paid by the defendants.
REVERSED.
SCHOTT, Chief Judge, dissenting in part:
I agree with the majority that the completion of the floors in question is not new construction because the design of the elevators and lobbies was a part of the base construction approved by the fire marshal without the requirement of elevator lobby separations. The crucial question is whether absence of the separations constitutes a serious life hazard, so as to warrant a modification in the lobbies.
In its brief appellant correctly points out that it was unnecessary for the Board of Review to reach the question of serious life hazard because it concluded that the completion of the floors was new construction which required the separations in any event. Thus, appellant dismisses the Board's "serious life hazard" finding as "perfunctory" and "mechanically made"; in effect as unnecessary dicta which was neither required nor supported. Accepting this argument I am led to the conclusion that the Board did not seriously consider this question in the first instance.
Neither did the district court consider the question because it concluded that the completion of the floors was new construction including the completion of the elevator lobbies. Appellant's solution, and the one adopted by my colleagues in the majority, is for this court to make an original determination on this crucial issue as to whether the absence of the separations constitutes a serious life hazard. In my opinion an appellate court should be one of review with the original fact finding and conclusions made by the trial court or in this case by the Board. I am especially reluctant to join the majority in this instance because of the seriousness of the question and because we do not have the benefit of any appearance by the fire marshal in this case.
Regretably, the fire marshal failed to argue his case in this court or even file a brief. If this were a private dispute involving a money judgment I would summarily reverse the trial court and the Board on the theory that the fire marshal has no interest in the outcome of the case and is willing to accept whatever result this court reaches. But we are confronted with a matter of the public safety which the fire marshal is charged with the responsibility of protecting. I am not satisfied to expose the public *67 to a possible hazard without having a full hearing before the Board and the district court to make a considered judgment that the construction of the remaining floors of the appellant's building without the separations is not a serious life hazard.
One does not have to be an engineer or a fire expert to conceive of the possibility that the absence of the separations may be a hazard. If fire occurs in the building smoke could travel through the elevators to other floors. If the smoke is confined to the lobby by separations the hazard of the smoke would probably be reduced. Whether the absence of the separations is in fact a serious life hazard should be thoroughly explored by the Board before it reaches a decision and before judicial review begins.
Accordingly, I concur with the result reached by my colleague's that the development of the lobbies is not new construction but I would remand the case to the Board of Review for a complete hearing on and thorough determination of the question of whether the absence of the lobby separations constitutes a serious life hazard.
PRESTON H. HUFFT, Judge Pro Tem., Dissenting.
Plaintiff, Joseph C. Canizaro-901 Limited Partnership, is the owner of a high-rise office building known as the LL & E Tower on Poydras Street in New Orleans, Louisiana. Prior to the construction of that building, the plaintiff submitted plans for the construction of the base building and elevator lobbies to the Office of the State Fire Marshal for approval.
In a letter dated July 9, 1985, the Office of the State Fire Marshal advised plaintiff's architect that plans for the proposed construction were found to be in compliance with all applicable laws and regulations provided that certain additional requirements were met including the separation of elevator lobbies from the remainder of the building by smoke barriers. Furthermore, this letter also contained the following paragraph:
"This review does not apply to future or undeveloped spaces. Before any work is commenced in that area, plans and specifications shall be approved by this office."
Plaintiff's architect responded to that letter with a letter dated August 12, 1985 in which, among other things, he argued that elevator lobby separations were not required for the proposed construction according to an exception in the 1983 edition of the Standard Building Code. Although there is no indication in the record that the State Fire Marshal responded to plaintiffs architect's letter of August 12, 1985, construction permits were subsequently issued to plaintiff by the City of New Orleans without any revision of the proposed plans to include elevator lobby separations.
Subsequent to the completion of construction of the base building and elevator lobbies, the plaintiff applied in November, 1986 to the State Fire Marshal for permits to build tenant space. The Fire Marshal refused to issue these permits unless, among other things, the plaintiff modified the previously constructed elevator lobbies to provide for separations. The requirement of elevator lobby separations was specified in the 1985 revision of the Standard Building Code which became effective in September, 1986.
The plaintiff appealed that decision to the Fire Marshal Board of Review. The Board of Review upheld the Fire Marshal's decision not to grant permits for construction of tenant space unless the elevator lobbies were modified to include separations but also stated that an acceptable alternative to the requirement of elevator lobby separations was the addition of a "pocket door" operated by emergency power and activated by a smoke detector device.
Plaintiff then filed a petition in Civil District Court pursuant to LSA-R.S. 40:1578.5 requesting review of the decision of the State Fire Marshal Board of Review claiming that it was arbitrary and capricious and not supported by sufficient evidence. The trial judge remanded this matter to the Fire Marshal Board of Review for a full hearing on the merits. The Fire Marshal Board of Review held a hearing on December 10, 1987 and found that the completion *68 of any floor in the building constitutes new construction of the entire floor thereby requiring elevator lobby separations. The Board of Review also found that the lack of elevator lobby separations in a fully sprinklered high-rise building is a serious life hazard.
The plaintiff appealed the decision and findings of the Board of Review to Civil District Court. The trial judge affirmed the findings of the Fire Marshal Board of Review dated December 10, 1987 and rendered judgment in favor of defendants, State of Louisiana, Department of Public Safety, Office of State Fire Marshal and Willie Miller, in his official capacity as Louisiana State Fire Marshal and the Fire Marshal Board of Review and against the plaintiff, Joseph C. Canizaro-901 Limited Partnership, dismissing plaintiffs suit at its cost.
In his reasons for judgment, the trial judge rejected the defendants' contention that the building plans which did not include elevator lobby separations were never approved. However, the trial judge agreed with the defendants' contention that the completion of uncompleted and unoccupied floors in a building is new construction and not simply the modification or alteration of existing construction. Therefore, the trial judge held that the plaintiff must comply with the 1985 version of the Standard Building Code which requires elevator lobby separations. Plaintiff now appeals the judgment of the trial court.
On appeal, the appellant argues that the trial court erred in concluding that the construction of tenant space on a floor of an office building constitutes new construction thereby mandating that not only the uncompleted tenant space but also other previously constructed areas of the floor be subject to the most recent provisions of the Standard Building Code. The appellant's argument centers around its interpretation of the statutory scheme regarding Louisiana's fire safety laws as they apply to new and existing construction.
According to the appellant, LSA-R.S. 40:1578.6 provides that all newly constructed structures must meet the high-rise provisions of the Southern Standard Building Code but that all existing buildings are exempt from that requirement unless there is a finding of the presence of a serious life hazard or a determination under LSA-R.S. 40:1575 that the existing building is especially liable to fire or dangerous to life. Appellant also argues that the Fire Marshal's conclusion that the construction of tenant space constitutes new construction is unfair because it requires that the entire floor, including the previously constructed elevator lobby areas, be subject to de novo scrutiny when tenant space construction permits are requested.
LSA-R.S. 49:965 establishes appellate jurisdiction over final judgments of district courts involving review of administrative agency decisions. In Hanson v. Louisiana State Racing Commission, 436. So.2d 1308 (La.App. 4th Cir.1983), writ denied, 443 So.2d 592 (La.1983), this court, citing Allen v. LaSalle Parish School Board, 341 So.2d 73 (La.App. 3rd Cir.1976), enunciated the standard of review in such cases as follows:
"The jurisprudence of our state is abundantly clear that where an administrative agency or hearing body is the trier of fact the courts will not review the evidence before such body except for the following limited purposes: (1) to determine if the hearing was conducted in accordance with the authority and formalities of the statute; (2) to determine whether or not the fact findings of the body were supported by substantial evidence; and (3) whether or not the hearing body's conclusions from these factual findings were arbitrary or constituted an abuse of the hearing body's discretion. Stewart v. East Baton Rouge Parish School Board; 251 So.2d 487 (La.App. 1st Cir.1971); Moffett v. Calcasieu Parish School Board, 179 So.2d 537 (La. App. 3rd Cir.1965); Barber v. Lake Charles Pipe and Supply Company, 148 So.2d 326 (La.App. 3rd Cir.1962).
The record indicates that the hearing held on December 10, 1987 was conducted in accordance with the pertinent statutory requirements. At that hearing, various *69 witnesses testified and evidence was presented concerning whether or not the proposed tenant space construction in question constituted new construction.
Jerry Jones, chief architect for the State Fire Marshal's office, testified that incomplete floors in high-rise office buildings are not considered existing structures; rather, they are considered incomplete shell floors. He stated that, in most cases, owners of high-rise buildings choose to construct such a building in phases, i.e. construction of the shell building and the subsequent construction of tenant space. According to Jones, a shell building review encompasses only the structural elements of the building including, among other things, exterior walls, stairs, elevators and mechanical rooms. In a shell building, corridors are not defined and offices are not laid out or completed.
Jones testified that a shell building review is not a final review by the State Fire Marshal's office. He stated that the construction of tenant space is considered new construction and any plans for the same must be approved by the Fire Marshall. Furthermore, plans submitted for tenant space construction must comply with the building code provisions in effect when those plans are submitted and not the code in effect at the time of construction of the shell building. Jones contends that plans for elevator lobbies are reviewed in the tenant space construction phase rather than in the shell building construction phase.
In the instant case, the trial court affirmed the Fire Marshal Board of Review finding that the construction of tenant space constitutes new construction and that appellant must comply with requirements of the 1985 edition of the Standard Building Code including the requirement of elevator lobby separations. Although permits were issued to plaintiff by the City of New Orleans for the original construction of the building without changes being made to the plans to include elevator lobby separations, the record is void of any evidence showing that the Fire Marshal unequivocally stated to plaintiff that these separations were not required and would not be required in the future. Furthermore, the Fire Marshal specified in his July 9, 1985 letter to plaintiff that the review of the original plans for the building would not apply to future tenant or undeveloped spaces and any future plans for those spaces would be subject to approval by the Fire Marshal.
I find, as did the Trial Court, that the hearing before the Fire Marshall Board of Review was conducted in accordance with the authority and formalities of the statute, the fact findings were supported by substantial evidence and the findings were not arbitrary or an abuse of the hearing body's wide discretion. The Trial Court was correct in affirming the decision of the Board of Review.
I respectfully dissent.
NOTES
[1] In Item 3 of the December 24, 1986 letter it was noted that the plans incorrectly stated the 18th floor, whereas the application specified the 20th floor.
[2] At the time the initial plans (dated 3/1/85) were submitted for review (initial letter on July 9, 1985), La.R.S. 40:1578.6 (as amended by 1979 La. Acts, No. 495 § 2 and prior to the 1985 amendment effective September 6, 1985) referenced in Section A, then the first paragraph, the 1976 edition of the Life Safety Code and noted that Section 518 was contained in the 1974 Amendments to the 1973 Code. The first paragraph also stated that the rules "shall include as technical references any portion of the 1973 Southern Standard Building Code required to interpret, elucidate, or explain the 1974 amendments to said code and other words applicable to high rise structures...." The 1985 amendment deleted that language as well as making substitutions.

The present version is the same except for the insertion of "except as provided for by R.S. 40:1641 et. seq." in Subsection C after buildings.
[3] Section 518 of Chapter IV of the SBC is the section in the 1974 amendments to the 1973 SBC which dealt with high rise buildings. The high rise provision of the SBC is now Section 506, as referenced by the updated rules of the Fire Marshal. La.R.S. 40:1578.6 A provides that the current amendments to the high rise provision are to be the standard for new construction.
[4] Only SBC Section 506 was relevant in Louisiana and New Orleans in 1985 and 1986 pursuant to statute and regulation. New Orleans did not adopt the entire SBC until 1987, effective date March 14, 1987. The 1949 Building Code (as revised in February, 1979) was in effect at the time of the construction. Article 1817, the high rise provision, required that at least one elevator open into a lobby separated from the remainder of the building in Section (h), but Section (k) provided that sprinkler protection could be utilized as an alternative to compartmentation. We assume the building complied with the New Orleans Building Code because a permit was issued.
[5] We note that LAC 17-4:3.1 (published in the La. Register February 20, 1980) provides that no governmental subdivision shall issue a building permit until the plans are approved by the Office of Fire Protection.
[6] La.R.S. 40:1578.6 A prior to the 1985 amendment included the additional portions of the SBC required to interpret the section directly referenced by Louisiana statute.